**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VITALGO, INC., a Delaware Corporation, and VITALGO SYSTEMS LTD., a foreign Corporation, | |
| *Plaintiffs*, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| KREG THERAPEUTICS, INC., an Illinois Corporation, and CRAIG POULOS, an individual, | |
| *Defendants*. | |

**COMPLAINT**

Plaintiffs VitalGo, Inc. and VitalGo Systems Ltd. (collectively, "Plaintiffs" or "VitalGo") by and through undersigned counsel, and for their Complaint against Defendants Kreg Therapeutics, Inc. and Craig Poulos (collectively, "Defendants"), state as follows:

**SUMMARY OF NATURE OF ACTION**

1.      Plaintiffs bring this Complaint against Defendants seeking relief for Defendants' past and continued willful and deliberate use of Plaintiffs' copyrights and trademarks, and for Defendants' false and misleading solicitation of consumers and promotion of Defendants and Defendants' products in a manner calculated to deceive the consuming public into believing that Defendants and Defendants' products are associated with Plaintiffs, Plaintiffs' marks, and/or Plaintiffs' products and that Plaintiffs, Plaintiffs' marks, and/or Plaintiffs' products are associated with Defendants and Defendants' products.

2.      This is an action for: (i) copyright infringement in violation of 17 U.S.C. § 501 *et seq.*; (ii) unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); (iii) unfair competition and false advertising pursuant

1

to Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)); (iv) trademark infringement under the common law of Illinois; (v) unfair competition under the common law of Illinois; (vi) a violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); and (vii) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*).

## THE PARTIES

3.      Plaintiff VitalGo, Inc. ("VitalGo") is Delaware corporation with its principal place of business at 3520 NW 56th St., Suite 303, Fort Lauderdale, FL 33309.

4.      Plaintiff VitalGo Systems, Ltd. ("VSI") is a foreign Cyprus corporation based in Nicosia, Cyprus.

5.      Defendant Kreg Therapeutics, Inc. ("Kreg") is an Illinois corporation with its principal place of business at 2240 West Walnut Street, Chicago, Illinois 60612.

6.      Defendant Craig Poulos is an individual who resides in Wilmette, Illinois, and who owns, is employed by, and works at Defendant Kreg's principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1338(a) and (b) and 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a).

8.      This Court has supplemental subject matter jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367, because the claims are joined with a substantial and related federal claim and form a part of the same case or controversy and derive from a common nucleus of operative fact under Article III of the United States Constitution.

9.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3) because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs.

10.     This Court has personal jurisdiction over Defendants because Defendants have regularly and purposefully directed their business activities toward Illinois and its residents and derive substantial revenue from goods used or consumed in Illinois and in this District.  For example, Defendants have transacted business in the State of Illinois and within this District, Defendants have sent advertisements and promotional materials to Illinois residents, Defendants have shipped products to Illinois residents, Defendants offer products for sale in Illinois, Defendants have committed tortious acts within, and directed to, Illinois, and Defendants' website features content that is available to Illinois residents.   Defendants' improper use of Plaintiffs' copyrights and trademarks and Defendants' unfair competition caused substantial injury to Plaintiffs in Illinois, and Defendants reasonably expected to cause injury to Plaintiffs in Illinois.  Defendants are also causing tortious injury in Illinois by acts or omissions outside of Illinois.  All of Defendants' activities have caused injury to Plaintiffs in Illinois.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, 1400(a), because Defendants reside in this District and Defendants are subject to personal jurisdiction in this District.  Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and (d), because a substantial portion of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

### Plaintiffs and Plaintiffs' Intellectual Property

12.     Plaintiff VSI was founded in 2007 in Cyprus.  VSI designed and developed the TOTAL LIFT BED tilting hospital bed ("Total Lift Bed"), the only hospital grade bed that can

3

elevate someone from a lying position to a fully standing position, with zero lifting on the part of the caregiver.  Plaintiffs manufacture the Total Lift Bed.

13.     In 2008, VSI established VitalGo NA LLC for the purpose of distributing the Total Lift Bed in North America.  VSI and VitalGo NA LLC signed a license and distribution agreement, which granted VitalGo NA LLC the right to use VSI's intellectual property.   In March of 2009, VitalGo NA LLC transferred its assets and operations to Plaintiff VitalGo.  VSI signed a new license agreement with VitalGo which granted VitalGo the exclusive right to produce and sell the Total Lift Bed in North America.   VitalGo was also granted the nonexclusive right to use the VITALGO and TOTAL LIFT BED marks, among other marks and intellectual property.

14.     Plaintiffs first began using the VITALGO and TOTAL LIFT BED marks in the United States in 2008.   Since that time, Plaintiffs have made widespread, consistent and continuous use of the VITALGO and TOTAL LIFT BED marks in interstate commerce in association with their Total Lift Bed.  As a result, Plaintiffs enjoy the exclusive right to use the VITALGO and TOTAL LIFT BED marks in the United States in connection with the goods provided by Plaintiffs.

15.     Plaintiffs have expended significant time, energy, and money promoting and marketing their business and goods under the VITALGO and TOTAL LIFT BED marks.  As a result, Plaintiffs enjoy valuable goodwill in connection with the VITALGO and TOTAL LIFT BED marks.   The VITALGO and TOTAL LIFT BED marks represent to the worldwide consuming public Plaintiffs and the goods offered by Plaintiffs.

4

16.     The VITALGO and TOTAL LIFT BED marks are highly distinctive, are widely and favorably known within the hospital bed industry throughout the United States, and have acquired secondary meaning in the marketplace.[1]

17.     Three United States patents relating to Plaintiffs' Total Lift Beds have been issued: (i) U.S. Patent No. 8,566,984, entitled "Multi-Position Support Apparatus Featuring a Movable Foot Support"; (ii) U.S. Patent No. 8,117,695, entitled "Multi-Position Support Apparatus Featuring a Movable Foot Support"; and (iii) U.S. Patent No. 8,104,123, entitled "Multi-Position Support Apparatus with a Movable Frame."

18.     In approximately 2008, Plaintiffs began showing the Total Lift Bed in advertising and marketing materials.  Plaintiff VSI has filed copyright applications for one of its brochures and two digital renderings or pictures of its Total Lift Bed (collectively, "Copyrighted Works"). VSI has filed the following copyright applications[2]:

| Exhibit | App. No. | Name of Work | Specimen |
|---------|----------|--------------|----------|
| A | 1-2957245231 | Total Lift Bed Brochure |  |

---

[1] Plaintiff VitalGo has filed federal trademark applications for the marks VITALGO and TOTAL LIFT BED for "Hospital beds; beds, specially made for medical purposes; beds, specially made for elder care purposes; mattresses, specially made for medical purposes; bed pillows, specially made for medical purposes."
[2] Copies of these applications are attached as **Exhibits A** through **C**.

| Exhibit | App. No. | Name of Work | Specimen |
|---------|----------|--------------|----------|
| B | 1-3224116491 | Total Lift Bed |  |
| C | 1-3234294731 | Total Lift Bed 2 |  |

(Table 1: List of Plaintiffs' Copyrights)

19.    In approximately early 2009, the Total Lift Bed was demonstrated at the Medtrade show in Las Vegas, Nevada, and shown on Plaintiffs' website at www.vitalgosys.com.

20.    In 2011, Defendant Kreg stated that Plaintiffs' "Total Lift Bed is the only hospital-grade bed that can elevate someone from a lying to a fully standing position, with zero lifting on the part of the caregiver." (*See Kreg Therapeutics, Inc. v. VitalGo, Inc*., Case No. 11-cv-6771, N.D. Il. (the "Prior Litigation"), Kreg's First Amended Complaint, Dkt. No. 17 ¶ 6.)

21.    In 2011, Defendant Kreg stated that Plaintiffs' Total Lift Bed was "new and novel." (*Id*. ¶ 14.)

22.    In 2011, Defendant Poulos stated that Plaintiffs' "Total Lift Bed is based on a revolutionary design that allows the repositioning of a critically ill patient from a prone position to a standing position without any lifting on the part of the ICU staff or exertion by the patient." (Prior Litigation, Poulos Affidavit, Dkt. No. 18 ¶ 24; *See also id*. ¶¶ 26, 29 (stating the design of Plaintiffs' Total Lift Bed is "revolutionary"); Prior Litigation, Poulos 2nd Supp. Affidavit, Dkt. No. 31 ¶ 12 (stating "With a product as revolutionary as the Total Lift Bed").)

23.     In the Prior Litigation, Defendant Poulos testified during a deposition that Plaintiffs' Total Lift Bed: (i) represented a unique technology that no one else had; (ii) had very unique attributes; and (iii) is the only game in town.

## Defendants' Illegal and Willfully Infringing Activities

## Defendants' Trademark Infringement and Unfair Competition

24.     Defendant Kreg provides specialty medical equipment to hospitals and nursing homes in Illinois and throughout the United States.

25.     Notwithstanding Plaintiffs' exclusive and senior rights in and to the TOTAL LIFT BED mark and Plaintiffs' creation, development, and manufacture of the Total Lift Bed, Defendants have used and/or continue to use Plaintiffs' TOTAL LIFT BED mark both with and without Plaintiffs' Copyrighted Works to deceive consumers and to falsely suggest that: (1) Defendants are Plaintiffs' exclusive distributor of the Total Lift Bed throughout the United States; (2) Defendants are Plaintiffs' exclusive distributor of the Total Lift Bed in certain territories; (3) Plaintiffs' Total Lift Bed is an "Exclusive KREG Product"; (4) Defendants "introduced" Plaintiffs' Total Lift Bed; (5) Plaintiffs' Total Lift Bed is Defendants' patented invention; (6) Defendants' Kreg bed is a Total Lift Bed designed and manufactured by Plaintiffs; (7) Plaintiffs' Total Lift Bed is designed and manufactured by Defendants; (8) the Total Lift Beds that were materially modified by Defendants and available to rent from Defendants are Plaintiffs' Total Lift Beds; (9) the Total Lift Beds that were materially modified by Defendants and rendered unsafe and/or inferior compared to Plaintiffs' Total Lift Bed, and available to rent from Defendants are Plaintiffs' Total Lift Beds; (10) new versions of Plaintiffs' Total Lift Bed that Defendants never received from Plaintiffs are available to rent from Defendants; and (11) Defendants' Catalyst bed is a Total Lift Bed made by Plaintiffs.

7

26.     Defendants' use and continued use of Plaintiffs' TOTAL LIFT BED mark occurs without attribution to and without acknowledging Plaintiffs or Plaintiffs' VITALGO mark.

27.     Defendants' use and continued use of Plaintiffs' TOTAL LIFT BED mark was done to actively and purposefully deceive consumers, to impair Plaintiffs' goodwill, and to attempt to obliterate Plaintiffs' corporate identity.

28.     In July 2011, Defendants wrote a letter to Plaintiffs' distributor, RecoverCare, claiming that Kreg "has an exclusive distributor agreement with VitalGo, Inc. in nine states and/or major metropolitan markets across the United States." In October 2011, Defendants' counsel repeated the same assertions in a letter to RecoverCare's counsel.

29.     In October 2011, Plaintiffs asked Defendants to cease and desist from asserting that they remain an exclusive distributor of Plaintiffs' Total Lift Bed. At the time of Plaintiffs' letter, Defendants' website asserted that the Total Lift Bed was an "Exclusive KREG Product." Despite Plaintiffs' letter, Defendants refused to stop using Plaintiffs' TOTAL LIFT BED mark and to stop referring to Defendants as the exclusive distributor of Plaintiffs' Total Lift Bed. For example, on or about January 2012, Defendants' website stated that the Total Lift Bed was an "Exclusive KREG Product."

30.     On or about 2010 and 2011, Defendants began making modifications or alterations to Plaintiffs' Total Lift Beds. In the Prior Litigation, Defendants admitted they made substantial modifications or alterations to Plaintiffs' Total Lift Beds. (Prior Litigation, Poulos Affidavit, Dkt. No. 18 ¶¶ 63, 64, 65, 66; *See also* Prior Litigation, Poulos 2nd Supp. Affidavit, Dkt. No. 31 ¶¶ 9, 14, 28, 50, 51.)

31.    As a result of Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants were, and are, no longer offering genuine and original products supplied by Plaintiffs.

32.    As a result of Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants were, and are, offering an inferior and/or unsafe product compared to the genuine and original Total Lift Beds supplied by Plaintiffs.

33.    As a result of Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants are offering a product that is materially different from the Total Lift Bed supplied by Plaintiffs.

34.    Despite Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants used and continue to use Plaintiffs' TOTAL LIFT BED mark to advertise, market, rent, and/or sell hospital beds that were not, and are not, Plaintiffs' Total Lift Beds.

35.    In the Prior Litigation, Defendant Poulos stated during his deposition that Plaintiffs' Total Lift Bed with Defendants' modifications and alterations was a materially different bed from Plaintiffs' Total Lift Bed. Defendants called that different bed the Kreg Bed or the Kreg Total Lift Bed.

36.    As of at least as recently as December 7, 2015, Defendants' website at www.kreg.us/NewsEvents.html, stated: "KREG introduces the Total Lift Bed$^{TM}$."

37.    As of at least as recently as December 30, 2015, Defendants' website at www.kreg.us/NewInnovations.html, stated: "The Total Lift Bed™ sets the new standard in user and caregiver safety and comfort."

38.    As of at least as recently as December 30, 2015, Defendants' website at www.kreg.us/NewInnovations.html, stated: "Movement of Total Lift Bed™."

9

39.     As of at least as recently as December 30, 2015, Defendants' website at www.kreg.us/NewInnovations.html, stated: "The Total Lift Bed™ takes the patient safely and quietly from 180 degrees to a standing position without any lifting on the part of the staff or exertion by the patient."

40.     As of at least as recently as December 30, 2015, Defendants' website at www.kreg.us/NewInnovations.html, stated: "Our patented technology gently raises the patient to a standing position."

41.     As of at least as recently as December 30, 2015, Defendants' website at www.kreg.us/NewInnovations.html, stated: "Exclusive in Illinois, Indiana, Wisconsin, Atlanta (Ga.), Jacksonville, Orlando and Tampa/Ft. Myers (Fla.), Philadelphia, Trento and Camden (NJ), & St. Louis (Mo.)."

42.     In a brochure that was previously distributed by Defendants, and, on information and belief, that Defendants continue to distribute in-whole or in-part, Defendants stated: "KREG is introducing the *Total-Lift Bed*$^{TM}$ on a trial basis at select hospitals in the United States."

43.     In that same brochure that was previously distributed by Defendants and, on information and belief, that Defendants continue to distribute in-whole or in-part, Defendants stated: "The Total-Lift Bed™ Advantage" and "The Total-Lift Bed sets a new standard in user and care-giver safety and comfort."

44.     In that same brochure that was previously distributed by Defendants and, on information and belief, that Defendants continue to distribute in-whole or in-part, Defendants stated: "Movement of the *Total Lift Bed*™: The Total Lift Bed takes the patient safely and quietly from 180 degrees to a standing position without any lifting on the part of staff or any

exertion by the patient. Our patented technology gently raises the patient to an standing position."

45.     Defendants' website at www.kreg.us/Products.html has stated and continues to state: "Total Lift Bed™" and "Kreg Therapeutics has introduced the revolutionary Total Lift Bed$^{TM}$."

46.     Defendants' website at www.kreg.us/Products.html has stated and continues to state: "The Total Lift Bed™ takes the patient safely and quietly from 180 degrees to a standing position with lifting on the part of staff or any exertion by the patient."

47.     Defendants' website at www.kreg.us/Products.html has used and continues to use a rendering of Plaintiffs' Total Lift Bed in connection with Defendants' use of Plaintiffs' TOTAL LIFT BED mark. That copyrighted rendering shows a version of Plaintiffs' Total Lift Bed that Defendants never received from Plaintiffs. Thus, Defendants have used Plaintiffs' TOTAL LIFT BED mark and Plaintiffs' Copyrighted Works to market and to continue to market a product Defendants do not have.

48.     Defendants previously marketed and continue to market Plaintiffs' Total Lift Bed and/or Kreg's lift bed using renderings, pictures, and/or photographs of Plaintiffs' Total Lift Bed and the TOTAL LIFT BED mark.

49.     Defendants previously marketed and, on information and belief, continue to market Plaintiffs' Total Lift Bed and/or Kreg's lift bed in studies and trials by referring to Plaintiffs' Total Lift Bed as the Kreg Total Lift Bed, the Kreg Bed, the Kreg Lift Bed, and/or the Kreg Tilt Bed.

50.     For example, a 2012 summary of a study conducted by Deborah Duey of Advocate Christ Medical Center states: "Utilization of the Kreg Lift Bed to Promote

11

Mobilization in the Intubated Patient in the Medical Intensive Cardiac Care Unit" and "The purpose of this study was to evaluate the Kreg tilt bed for early ICU mobility."

51.     A powerpoint presentation authored by Ms. Duey and other members of Advocate Christ Medical Center that is related to the 2012 study and is available online at www.advocatehealth.com/documents/clinicalevents/Mobility.pdf includes renderings, pictures, and/or photographs of Plaintiffs' Total Lift Bed yet refers to the "Kreg Tilt Bed."

52.     Another summary of a study conducted by Ms. Duey of Advocate Christ Medical Center that is available online at www.advocatehealth.com/documents/clinicalresearch/poster/2012researchposter007.pdf states: "Early Mobility in the Mechanically Ventilated Intensive Care Patient Using the Kreg Tilt Bed," acknowledges "Kreg Therapeutics for the use of the Kreg Tilt bed during the study," and includes a rendering, picture, and/or photograph of Plaintiffs' Total Lift Bed, yet refers to the "Kreg Tilt Bed."

53.     An August 2015, Bariatric Toolkit prepared by VISN 8 Patient Safety Center of Inquiry and available at www.visn8.va.gov/PatientSafetyCenter/BariatricToolkit.pdf states: "Kreg (kreg.us). Total Lift Bed."

54.     Defendants have used Plaintiffs' TOTAL LIFT BED mark at trade shows and conferences.

55.     For example, the American Association of Critical Care Nurses' 2013 National Teaching Institute & Critical Care Exposition includes a profile of Defendant Kreg and its products that was submitted by Defendant Kreg, is available at www.aacn.org/DM/NTI/ExhibitorsView.aspx?itemid=9002747142&mid=0&year=NTI2013, and

that states: "Total Lift The bed's [*sic*] revolutionary design allows users to independently get out of bed and reduces the risk of work-related injuries to care-givers and staff."

56.     Defendants are not authorized to use Plaintiffs' TOTAL LIFT BED mark in association with hospital beds.

57.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark is identical to and confusingly similar to Plaintiffs' TOTAL LIFT BED mark in appearance, sound, meaning, and commercial impression.

58.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark falsely suggests that Defendants are somehow affiliated, connected or associated with Plaintiffs or Plaintiffs' hospital beds.

59.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark falsely suggests that Plaintiffs' hospital beds originate from Defendants or that Defendants' hospital beds originate from Plaintiffs.

60.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark trades off the goodwill of Plaintiffs' TOTAL LIFT BED mark, and is without permission or license from Plaintiffs.

61.     Defendants advertise and/or sell hospital beds in commerce using Plaintiffs' TOTAL LIFT BED mark.

62.     Defendants use and intend to continue using Plaintiffs' TOTAL LIFT BED mark without the authorization of Plaintiffs, thereby confusing consumers as to the origin of Defendants' hospital beds and Defendants' affiliation with Plaintiffs or Plaintiffs' hospital beds, and resulting in damage and detriment to Plaintiffs and to Plaintiffs' reputation and goodwill.

63.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark is likely to cause, has caused, and is causing actual consumer confusion in the marketplace as to the origin of

13

Defendants' hospital beds and Defendants' affiliation with Plaintiffs and Plaintiffs' hospital beds.

64.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark is likely to cause, has caused, and is causing actual consumer confusion in the marketplace as to the origin of Plaintiffs' hospital beds and Plaintiffs' affiliation with Defendants and Defendants' hospital beds.

65.     Defendants knew or had reason to know of Plaintiffs' TOTAL LIFT BED mark at the time Defendants commenced their unauthorized use of the TOTAL LIFT BED mark. Defendants were on actual notice of Plaintiffs' TOTAL LIFT BED mark when Defendants Kreg and Poulos signed the Agreement and Amendment between VitalGo and Defendant Kreg (defined below).

66.     Defendants intentionally used Plaintiffs' TOTAL LIFT BED mark so as to create consumer confusion and traffic off of Plaintiffs' reputation and goodwill under the TOTAL LIFT BED mark.

67.     On or about 2014, Defendants introduced their Catalyst bed to compete with Plaintiffs' Total Lift Bed, but failed to show their Catalyst bed in marketing materials and on their website.  Until on or about March 2016, Defendants intentionally used only Plaintiffs' TOTAL LIFT BED mark to introduce and to promote sales of Defendants' Catalyst bed. Defendants used Plaintiffs' TOTAL LIFT BED mark to create consumer confusion and traffic off of Plaintiffs' reputation and goodwill under the TOTAL LIFT BED mark.  Defendants also used and continued to use Plaintiffs' Copyrighted Works in conjunction with Plaintiffs' TOTAL LIFT BED mark to introduce and to promote sales of Defendants' Catalyst bed.

68.     Defendant Poulos filed a provisional patent application related to Defendants' Catalyst bed on April 18, 2014; a non-provisional patent application (14/690,387) related to Defendants' Catalyst bed on April 18, 2015' and Defendant Poulos' patent application no. 14/690,387 was published on October 22, 2015, as Publication No. US 2015/0297432.

## Defendants' Copyright Infringement

69.     Defendants have reproduced, distributed, displayed, and used, and continue to reproduce, distribute, display, and use, exact or nearly identical reproductions of Plaintiffs' proprietary Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works on Defendants' website, brochures, and in other promotional materials.

70.     Defendants knew of, and had access to, Plaintiffs' Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works at the time Defendants commenced their unauthorized reproduction, distribution, display, and use of Plaintiffs' Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works.  Defendants received Plaintiffs' Total Lift Bed Brochure and Total Lift Bed works directly from Plaintiffs.  Defendants did not receive the Total Lift Bed 2 work from Defendants. On information and belief, Defendants copied the Total Lift Bed 2 work from Plaintiffs' website or from some other source connected to Plaintiffs.

71.     As of at least December 30, 2015, Defendants reproduced, distributed, displayed, and used Plaintiffs' Total Lift Bed Brochure and Total Lift Bed 2 works on its website at www.kreg.us/NewInnovations.html.

72.     Defendants' website at www.kreg.us/Products.html has reproduced, distributed, displayed, and used, and continues to reproduce, distribute, display, and use Plaintiffs' Total Lift Bed 2 work as shown below:



(Picture 1: Showing Defendants' display of Plaintiffs' Total Lift Bed 2 work on Defendants' Website)

73.     Plaintiffs' Total Lift Bed 2 work shows a version of Plaintiffs' Total Lift Bed that Defendants never received from Plaintiffs.

74.     Defendants previously reproduced, distributed, displayed, and used, and, on information and belief, continue to reproduce, distribute, display, and use Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works in studies and trials.

75.     Defendants previously reproduced, distributed, displayed, and used, and, on information and belief, continue to reproduce, distribute, display, and use Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works at trade shows and conferences.

76.     In a brochure that was previously reproduced, distributed, displayed, and used by Defendants and, on information and belief, that Defendants continue to reproduce, distribute, display, and use, in-whole or in-part, Defendants previously marketed and, on information and belief, continue to market Plaintiffs' Total Lift Bed and Kreg's bed by reproducing, distributing, displaying, and using Plaintiffs' Total Lift Bed Brochure and Total Lift Bed works in Defendants' brochure, as shown below:

16



(Picture 2: Showing Defendants' display of Plaintiffs' Total Lift Bed Brochure and Total Lift Bed works in Defendants' brochure)

77.     As a result of Defendants' modifications or alterations to Plaintiffs' Total Lift Beds, Defendants' used and are using Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works to advertise, market, rent, and/or sell hospital beds that were not and are not Plaintiffs' Total Lift Beds.

78.     In the Prior Litigation, Defendant Poulos testified in his deposition that Plaintiffs' Total Lift Bed with Defendants' modifications and alterations became a different bed from Plaintiffs' Total Lift Bed that Defendants called the Kreg Bed or the Kreg Total Lift Bed.

79.     In the Prior Litigation, Defendant Poulos testified in his deposition that: (i) Defendants reproduce, distribute, display, and use Plaintiffs' Total Lift Bed and Total Lift Bed 2 works on their website; (ii) Plaintiffs' Copyrighted Works do not show the substantial modifications and alterations Defendants made to Plaintiffs' Total Lift Bed; and (iii) Defendants provide to their customers a modified version of Plaintiffs' Total Lift Bed or a different bed from Plaintiffs' Total Lift Bed than what is depicted in Plaintiffs' Copyrighted Works on Defendants' website.

80.     On or about 2014, Defendants introduced their Catalyst bed to compete with Plaintiffs' Total Lift Bed but Defendants failed to show their Catalyst bed in marketing materials

17

and on their website. Until on or about March 2016, Defendants intentionally used only Plaintiffs' Copyrighted Works to introduce and to promote sales of Defendants' Catalyst bed.

**Defendant Poulos' Personal Liability**

81.     Defendant Poulos is the founder, owner, president, and CEO of Defendant Kreg.

82.     Defendant Poulos owns 100% of the stock of Defendant Kreg and has always owned 100% of the stock of Defendant Kreg.

83.     Defendant Poulos provided all the capital to form Defendant Kreg.

84.     In the Prior Litigation, Defendant Poulos submitted an affidavit on behalf of Defendant Kreg that included the following sections: "My Role With My Customers," "My Distribution of the Total Lift Bed," "My Improvements to the Total Lift Bed," and "The Harm to My Business." (*See generally*, Prior Litigation, Poulos Affidavit, Dkt. No. 18.)

85.     In the Prior Litigation, Defendant Poulos submitted an affidavit on behalf of Defendant Kreg that stated: "I founded Kreg Therapeutics more than 15 years ago and have developed it into a regional provider of specialty medical equipment." (Prior Litigation, Poulos 2nd Supp. Affidavit, Dkt. No. 31 ¶ 2.)

86.     In the Prior Litigation, Defendant Poulos submitted an affidavit on behalf of Defendant Kreg that stated: "I am the sole inventor or co-inventor on each of the following eight U.S. Patents for medical devices" and "As a result of this combination of experience, I fully understand the design, manufacture and marketing of Kreg Therapeutics' products." (Prior Litigation, Poulos 2nd Supp. Affidavit, Dkt. No. 31 ¶¶ 5, 6.)

87.     In the Prior Litigation, Defendant Poulos testified during his deposition that he focuses all of his time on behalf of Defendant Kreg to sales and marketing.

88.     Defendant Poulos is responsible for the marketing of Defendant Kreg.

89.　　In the Prior Litigation, Defendant Poulos verified all of Defendant Kreg's discovery responses and was the only person who provided information in support of Defendant Kreg's discovery responses.

90.　　In the Prior Litigation, Defendant Poulos was Defendant Kreg's Rule 30(b)(6) designee and Defendant Poulos made the decision that he would testify as Defendant Kreg's designee.

91.　　Defendant Poulos signed the Agreement and the Amendment on behalf of Defendant Kreg.

92.　　Kreg Medical Inc. ("KMI") manufactures specialty medical equipment, including Defendant Kreg's Catalyst bed and the materially modified Total Lift Beds, for only Defendant Kreg. Defendant Poulos also owns 100% of KMI's stock and provided all of the capital to form KMI.

93.　　As the founder, 100% owner, president, and CEO of Defendant Kreg, Defendant Poulos controls and makes all of Defendant Kreg's decisions.

94.　　As the founder, 100% owner, president, and CEO of Defendant Kreg, Defendant Poulos has full responsibility for Defendant Kreg's business.

95.　　As the founder, 100% owner, president, and CEO of Defendant Kreg, Defendant Poulos stands to benefit personally from the business of Defendant Kreg.

96.　　Defendant Poulos holds himself out as the principal director and the person who controls Defendant Kreg and makes all of Defendant Kreg's decisions.

97.　　Defendant Poulos willfully, knowingly, and/or actively participated in and supervised, the illegal and willfully infringing activities of Defendant Kreg, and used Defendant Kreg to carry out his illegal and willfully infringing activities.

98.     On information and belief, Defendant Poulos' active participation in and supervision of, Defendants Kreg's wrongful misconduct was intentional, unjustified and/or malicious, and done to purposefully harm Plaintiffs and Plaintiffs' products.

99.     On information and belief, outside of Defendant Poulos' duties as president, CEO, 100% stock owner, principal, member, director, manager, and/or corporate officer of Defendant Kreg, Defendant Poulos was motivated by an improper purpose to disrupt, harass, defraud, interfere, and cause damages and injury to Plaintiffs.

100.    On information and belief, Defendant Poulos was the individual at Defendant Kreg with the responsibility for selecting the hospital beds that Defendant Kreg makes, distributes, markets, and advertises.

101.    On information and belief, Defendant Poulos was the individual at Defendant Kreg with the responsibility for using Plaintiffs' TOTAL LIFT BED mark in Defendant Kreg's brochures, advertisements, and marketing materials.

102.    On information and belief, Defendant Poulos was the individual at Defendant Kreg with the responsibility for deliberately choosing to trade on the goodwill established by Plaintiffs by using the TOTAL LIFT BED mark both with and without the Copyrighted Works to falsely suggest that Defendant Kreg and Defendants' products were somehow associated with Plaintiffs and/or Plaintiffs' products, and to falsely suggest that Plaintiffs' Total Lift Beds originated with Defendant Kreg.

103.    On information and belief, Defendant Poulos was the individual at Defendant Kreg with the responsibility for deliberately choosing to trade on the goodwill established by Plaintiffs by using the TOTAL LIFT BED mark both with and without the Copyrighted Works to falsely suggest that Plaintiffs and Plaintiffs' products were somehow associated with Defendant

Kreg and/or Defendants' products, and to falsely suggest that Defendant Kreg's products originated with Plaintiffs.

104. Defendant Poulos made the decision to go forward with the unauthorized use of Plaintiffs' TOTAL LIFT BED mark.

105. Defendant Poulos stood to benefit personally and to personally profit from the decision to use Plaintiffs' TOTAL LIFT BED mark without authorization.

106. On information and belief, Defendant Poulos personally authorized the use of Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works on Defendants Kreg's brochures, advertisements, website, and marketing materials.

107. Defendant Poulos stood to benefit personally and to personally profit from the decision to use the Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works without authorization.

108. On information and belief, it was Defendant Poulos' decision to use Plaintiffs' TOTAL LIFT BED mark and to use Plaintiffs' Copyrighted Works with and without Plaintiffs' TOTAL LIFT BED mark to promote the Total Lift Beds that were materially modified by Defendants.

109. On information and belief, it was Defendant Poulos' decision to use Plaintiffs' TOTAL LIFT BED mark and to use Plaintiffs' Copyrighted Works with and without Plaintiffs' TOTAL LIFT BED mark to promote the Total Lift Beds that were materially modified by Defendants and rendered unsafe or inferior compared to Plaintiffs' Total Lift Bed.

110. On information and belief, it was Defendant Poulos' decision to introduce Defendants' Catalyst bed to compete with Plaintiffs' Total Lift Bed and to not show Defendants' Catalyst bed in marketing materials and on Defendants' website for almost two years.

111.    On information and belief, it was Defendant Poulos' decision to instead use Plaintiffs' TOTAL LIFT BED mark to introduce and promote sales of Defendants' Catalyst bed during that period.

112.    On information and belief, it was Defendant Poulos' decision to instead use Plaintiffs' Copyrighted Works with and without Plaintiffs' TOTAL LIFT BED mark to introduce and to promote sales of Defendants' Catalyst bed during that period.

113.    On information and belief, it was Defendant Poulos' decision to use and/or continue to use Plaintiffs' TOTAL LIFT BED mark both with and without Plaintiffs' Copyrighted Works to deceive consumers and to falsely suggest that: (1) Defendants are Plaintiffs' exclusive distributor of the Total Lift Bed throughout the United States; (2) Defendants are Plaintiffs' exclusive distributor of the Total Lift Bed in certain territories; (3) Plaintiffs' Total Lift Bed is an "Exclusive KREG Product"; (4) Defendants "introduced" Plaintiffs' Total Lift Bed; (5) Plaintiffs' Total Lift Bed is Defendants' patented invention; (6) Defendants' Kreg bed is a Total Lift Bed designed and manufactured by Plaintiffs; (7) Plaintiffs' Total Lift Bed is designed and manufactured by Defendants; (8) the Total Lift Beds that were materially modified by Defendants and available to rent from Defendants are Plaintiffs' Total Lift Beds; (9) the Total Lift Beds that were materially modified by Defendants and rendered unsafe and/or inferior compared to Plaintiffs' Total Lift Bed and available to rent from Defendants are Plaintiffs' Total Lift Beds; (10) new versions of Plaintiffs' Total Lift Bed that Defendants never received are available to rent from Defendants; and/or (11) Defendants' Catalyst bed is a Total Lift Bed made by Plaintiffs.

114.    Defendant Poulos is also personally liable for the acts of Defendant Kreg because the corporate veil of Defendant Kreg should be pierced and/or because Defendant Poulos is the

alter ego of Defendant Kreg. A unity of interest and ownership causes any separate personalities of Defendant Kreg and Defendant Poulos to no longer exist. Further, circumstances exist such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. More specifically, on information and belief: (1) Defendant Kreg fails to maintain adequate corporate records or to comply with corporate formalities; (2) funds and other assets of Defendant Poulos are commingled with the funds and other assets of Defendant Kreg; (3) Defendant Poulos treats the assets of Defendant Kreg as his own; (4) Defendant Kreg and Defendant Poulos' other entities fail to maintain arm's length relationships; (5) Defendant Kreg was inadequately capitalized; (6) Defendant Kreg have nonfunctioning officers or directors; and/or (7) Defendant Kreg is a mere façade for the operations of Defendant Poulos.

### Plaintiffs' Previous Agreements With Defendant Kreg To Distribute Plaintiffs' Total Lift Bed And The Breach Of Contract Litigation Initiated By Defendant Kreg

115. VitalGo and Defendant Kreg entered into a written contract ("the Agreement"), effective as of December 23, 2009, for Defendant Kreg to distribute Plaintiffs' Total Lift Bed in Indiana, Illinois, Wisconsin, and greater Metropolitan Atlanta, Georgia ("the original territories"). The Agreement granted Defendant Kreg "the exclusive and non-assignable right to sell, lease and rent" Total Lift Beds in the original territories until January 31, 2011.

116. To maintain its exclusivity beyond January 31, 2011, the Agreement required Defendant Kreg to commit to future minimum purchases of Plaintiffs' Total Lift Beds. Specifically, the Agreement stated that Defendant Kreg could renew its exclusive distribution rights for an additional twelve month period "by agreeing to commit to future minimum purchases in 2011 . . . prior to the completion of the current period."

117. The Agreement also stated: "The term of this Agreement shall extend until January 31, 2011, unless sooner terminated, but, pursuant to section 1.C. above, [VitalGo] cannot

replace [Kreg] in the Territories until February 1, 2012, and thus [Kreg] will have exclusive distribution rights in the Territories of Indiana, Illinois, Wisconsin and greater metropolitan Atlanta, Georgia until at least February 1, 2012, provided [Kreg] meets minimum purchase requirements for 2011. Thus, all rights and obligations of the parties herein shall survive until at least February 1, 2012. Termination shall not relieve either party of obligations incurred prior thereto."

118. The Agreement further stated: "[VitalGo] expressly prohibits any direct or indirect use, reference to, or other employment of its name, trademarks, or trade name exclusively licensed to [VitalGo], except as specified in this Agreement or as expressly authorized by [VitalGo] in writing. All advertising and other promotional material will be submitted to [VitalGo] at least two weeks in advance and will only be used if [VitalGo] consents thereto, which consent shall not be unreasonably withheld."

119. On April 6, 2010, Defendant Kreg and VitalGo executed an amendment ("the Amendment") to the Agreement. The Amendment added Florida, Greater Metropolitan Philadelphia and South New Jersey area, and Greater Metropolitan St. Louis, Missouri ("the additional territories") to the list of exclusive territories in Exhibit B of the Agreement.

120. The Amendment stated that Defendant Kreg "shall have exclusive distribution rights, as set forth in Paragraph 1 of the Agreement, for all Territories of amended Exhibit B until at least May 31, 2012."

121. VitalGo believed that Defendant Kreg failed to make the requisite commitment to purchase Total Lift Beds in 2011. As a result, VitalGo sent a letter on June 2, 2011, to Defendant Kreg in which it informed Defendant Kreg that it was no longer VitalGo's exclusive dealer because the Agreement and the Amendment had expired. On September 26, 2011,

24

Defendant Kreg filed a lawsuit against VitalGo in the District Court for the Northern District of Illinois seeking to enjoin VitalGo from breaching the parties' agreements and refusing to recognize Defendant Kreg as its exclusive distributor in the original and additional territories through May 31, 2012. (*See generally,* Prior Litigation.)

122. On November 3, 2011, the Court in the Prior Litigation denied Defendant Kreg's motion for a temporary restraining order. (*See* Prior Litigation, Dkt. No. 47.)

123. On March 28, 2013, the Court in the Prior Litigation granted–in-part and denied-in-part VitalGo's motion for summary judgment and denied Defendant Kreg's motion for summary judgment on Defendant Kreg's breach of contract claim because it had not demonstrated an entitlement to injunctive relief. (*See* Prior Litigation, Dkt. No. 93.)

124. The Court in the Prior Litigation held that "the parties' agreement as to the original territories was distinct from their agreement as to the additional territories." The Court further held that Defendant Kreg performed under the Agreement and the Amendment with respect to the original territories and "Under the plain language of Paragraph 1 of the Agreement, and Paragraph 2 of the Amendment, that commitment vested in Kreg exclusive distribution rights in Indiana, Illinois, Wisconsin, and greater metropolitan Atlanta, Georgia until at least May 31, 2012." (*See* Prior Litigation, Dkt. No. 93 at 22, 25.)

125. In the Prior Litigation, the Court also held that Defendant Kreg's exclusive distribution rights in the additional territories ended on June 30, 2011. Specifically, the Court stated that "Kreg did not perform as to the additional categories prior to 'the deadline for [Kreg] to commit,' June 30, 2011." (*See* Prior Litigation, Dkt. No. 93 at 23, 25.)

126. On March 25, 2014, the Court in the Prior Litigation denied Defendant Kreg's second motion for summary judgment. (*See* Prior Litigation, Dkt. No. 131.)

127.    On December 5, 2015, while the Prior Litigation was pending, VitalGo filed for Chapter 11 bankruptcy.

128.    Defendant Kreg's exclusive distribution rights in the original territories under the Agreement ended on May 31, 2012.  Defendant Kreg's exclusive distribution rights in the additional territories under the Amendment ended on June 30, 2011.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. § 501)

129.    Plaintiffs reallege and incorporate by reference paragraphs 1 – 128 as if fully set forth herein.

130.    Plaintiff VSI is the creator of the Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works.

131.    Complete applications for copyright registration of the Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works have been received by the Copyright Office in compliance with the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

132.    Defendants have reproduced, distributed, displayed, and used, and continue to reproduce, distribute, display, and use, exact or nearly identical reproductions of Plaintiffs' proprietary Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works in their brochures, website, advertisements, and marketing materials without a license or permission to do so.

133.    Without the consent of Plaintiffs, Defendants have appropriated Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works and used them in Defendants' marketing and promotional materials.

26

134. Defendants' unauthorized reproduction, distribution, display, and/or use of Plaintiffs' Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works has caused and is causing Plaintiffs irreparable injury for which Plaintiffs have no adequate remedy at law.

135. Defendants have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were, and continue to be, willful, intentional and malicious.

136. As a direct and proximate result of Defendants' willful violation of the Copyright Act, Plaintiffs have suffered damages in an amount to be proven at trial.

137. Plaintiffs are entitled to recover their full costs and attorneys' fees pursuant to 17 U.S.C. § 505.

**COUNT II**
**FEDERAL UNFAIR COMPETITION – FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125)**

138. Plaintiffs reallege and incorporate by reference paragraphs 1 – 137 as if fully set forth herein.

139. Plaintiffs have spent substantial sums of money to promote their Total Lift Bed under the TOTAL LIFT BED mark. Plaintiffs have also generated substantial revenue from using the TOTAL LIFT BED mark. The TOTAL LIFT BED mark is distinctive and has become impressed upon the minds of the trade and public as identifying Plaintiffs' unique and revolutionary Total Lift Bed. Plaintiffs' TOTAL LIFT BED mark also indicates a source of origin of the hospital beds provided in association with the TOTAL LIFT BED mark. The reputation and goodwill that has been built-up in Plaintiffs' TOTAL LIFT BED mark is of great value to Plaintiffs.

140.    Defendants' unauthorized interstate use in commerce of Plaintiffs' TOTAL LIFT BED mark to promote, advertise, market, distribute, and/or sell hospital beds constitutes false designation of origin pursuant to 15 U.S.C. §§ 1125(a).

141.    Defendants' use of Plaintiffs' TOTAL LIFT BED mark both with and without Plaintiffs' Copyrighted Works constitutes false designation of origin that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Plaintiffs and/or Plaintiffs' goods with Defendants and/or their goods, and/or as to the origin, sponsorship, or approval of Defendants and/or their goods by or with Plaintiffs and/or their goods, and vice versa, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).    Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions.    Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their TOTAL LIFT BED mark and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

142.    Defendants' representations and descriptions in brochures and promotional materials are false and misleading and were done to deceive the consuming public and to capitalize on the goodwill developed by Plaintiffs.    Defendants misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' and Plaintiffs' goods by falsely indicating that: (i) Plaintiffs' hospital beds come from Defendants;   (ii) Defendants or Defendants' goods are somehow connected with, sponsored by, or affiliated with Plaintiffs and Plaintiffs' goods;  (iii) Defendants' hospital beds come from Plaintiffs; and/or (iv) Plaintiffs or Plaintiffs' goods are somehow connected with, sponsored by, or affiliated with Defendants and Defendants' goods.

28

143.    Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the TOTAL LIFT BED mark, Defendants have continued to use Plaintiffs' TOTAL LIFT BED mark without Plaintiffs' authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their TOTAL LIFT BED mark.

144.    Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

145.    Defendants are liable for false designation of origin under 15 U.S.C. § 1125(a).

**COUNT III**
**FEDERAL UNFAIR COMPETITION – FALSE ADVERTISING**
**(15 U.S.C. § 1125)**

146.    Plaintiffs reallege and incorporate by reference paragraphs 1 – 145 as if fully set forth herein.

147.    Plaintiffs have spent substantial sums of money to promote their Total Lift Bed under the TOTAL LIFT BED mark. Plaintiffs have also generated substantial revenue from using the TOTAL LIFT BED mark. The TOTAL LIFT BED mark is distinctive and has become impressed upon the minds of the trade and public as identifying Plaintiffs' unique and revolutionary Total Lift Bed. Plaintiffs' TOTAL LIFT BED mark also indicates a source of origin of the hospital beds provided in association with the TOTAL LIFT BED mark. The reputation and goodwill that has been built-up in Plaintiffs' TOTAL LIFT BED mark is of great value to Plaintiffs.

148.    Defendants' unauthorized interstate use in commerce of Plaintiffs' TOTAL LIFT BED mark in commercial advertising or promotion to promote, advertise, market, distribute and/or sell hospital beds constitutes false advertising pursuant to 15 U.S.C. §§ 1125(a).

149.    Defendants' false or misleading descriptions or representations of fact in brochures and promotional materials both with and without Plaintiffs' Copyrighted Works constitutes false advertising that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Plaintiffs and/or their goods with Defendants and/or their goods, and/or as to the origin, sponsorship, or approval of Defendants or Defendants' goods by or with Plaintiffs and/or their goods, and vice versa, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their TOTAL LIFT BED mark and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

150.    Defendants' representations and descriptions in brochures and promotional materials are false and misleading and were done to deceive the consuming public and to capitalize on the goodwill developed by Plaintiffs. Defendants misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' and Plaintiffs' goods by falsely indicating that: (i) Plaintiffs' hospital beds come from Defendants; (ii) Defendants or Defendants' goods are somehow connected with, sponsored by, or affiliated with Plaintiffs and Plaintiffs' goods; (iii) Defendants' hospital beds come from Plaintiffs; and/or (iv) Plaintiffs or Plaintiffs' goods are somehow connected with, sponsored by, or affiliated with Defendants and Defendants' goods. Defendants' actions constitute literally false and/or misleading descriptions and representations of fact.

151.    Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the TOTAL LIFT BED mark, Defendants have continued to use Plaintiffs' TOTAL LIFT BED mark without Plaintiffs' authorization or consent. Defendants' actions are deliberate

30

and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their TOTAL LIFT BED mark.

152.    Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

153.    Defendants are liable for false advertising under 15 U.S.C. § 1125(a).

**COUNT IV**
**COMMON LAW TRADEMARK INFRINGEMENT**

154.    Plaintiffs reallege and incorporate by reference paragraphs 1 – 153 as if fully set forth herein.

155.    Plaintiffs have common law rights in the TOTAL LIFT BED mark based on their continuous use of the TOTAL LIFT BED mark in Illinois in connection with hospital beds.

156.    Defendants' unauthorized use of Plaintiffs' TOTAL LIFT BED mark to promote, advertise, market, distribute and/or sell hospital beds constitutes common law trademark infringement and is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Defendants' and Plaintiffs' goods, or as to a connection or affiliation with Plaintiffs or Plaintiffs' goods, or permission from Plaintiffs, that does not exist, causing irreparable harm to Plaintiffs for which there is not adequate remedy at law.

157.    Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the TOTAL LIFT BED mark, Defendants have continued to use Plaintiffs' TOTAL LIFT BED mark without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their TOTAL LIFT BED mark.

158.    Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

159.    Defendants are liable for common law trademark infringement.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

160.    Plaintiffs reallege and incorporate by reference paragraphs 1 – 159 as if fully set forth herein.

161.    Defendants' unauthorized, intentional, and willful use of Plaintiffs' TOTAL LIFT BED mark, both with and without Plaintiffs' Copyrighted Works, to promote, advertise, market, distribute and/or sell hospital beds in Illinois constitutes Illinois common law unfair competition.

162.    Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public and to capitalize on the goodwill developed by Plaintiffs.

163.    Defendants' use of Plaintiffs' TOTAL LIFT BED mark is likely to cause confusion, mistake, and deception among consumers as to the origin, sponsorship, or approval of Defendants and/or Defendants' good by or with Plaintiffs and/or Plaintiffs' goods.  Defendants misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' and Plaintiffs' goods by falsely indicating that:   (i) Plaintiffs' hospital beds come from Defendants; (ii) Defendants or Defendants' goods are somehow connected with, sponsored by, or affiliated with Plaintiffs and Plaintiffs' goods;  (iii) Defendants' hospital beds come from Plaintiffs; and/or (iv) Plaintiffs or Plaintiffs' goods are somehow connected with, sponsored by, or affiliated with Defendants and Defendants' goods.  Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their TOTAL LIFT BED mark and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

164.    Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the TOTAL LIFT BED mark, Defendants have continued to use Plaintiffs' TOTAL LIFT BED mark without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and

willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their TOTAL LIFT BED mark.

165.    Plaintiffs have sustained injury, damage, and loss based on Defendants' actions.

166.    Defendants are liable for Illinois common law unfair competition.

## COUNT VI
## VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

167.    Plaintiffs reallege and incorporate by reference paragraphs 1 – 166 as if fully set forth herein.

168.    The acts of Defendants complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/1 *et seq.* insofar as Defendants have:

(a) passe[d] off goods or services as those of another;

(b) cause[d] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) cause[d] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represent[ed] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

and

(e) represent[ed] that goods or services are of a particular standard, quality, or grade.

169.    Defendants' unauthorized, intentional, and willful use of Plaintiffs' TOTAL LIFT BED mark, both with and without Plaintiffs' Copyrighted Works, to promote, advertise, market, distribute and/or sell hospital beds constitutes unfair competition within the meaning of the Illinois Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.*

170.     Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in Illinois and to capitalize on the goodwill developed by Plaintiffs.

171.     Defendants' use of Plaintiffs' TOTAL LIFT BED mark in connection with Defendants' sale and distribution of hospital beds constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Plaintiffs and/or their goods with Defendants and/or their goods, and/or as to the origin, sponsorship, or approval of Defendants or Defendants' goods by or with Plaintiffs and/or their goods, and vice versa.  Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions.  Defendants' unfair competition jeopardizes the goodwill built up by Plaintiffs in their TOTAL LIFT BED mark and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

172.     Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the TOTAL LIFT BED mark, Defendants have continued to use Plaintiffs' TOTAL LIFT BED mark without Plaintiffs' authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their TOTAL LIFT BED mark.

173.     Plaintiffs have sustained injury, damage, and loss in Illinois based on Defendants' actions.  Defendants' actions directly or indirectly affected Illinois.

174.     Defendants are liable for a violation of the Illinois Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.*

34

175.     Pursuant to the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.*, Plaintiffs are entitled to permanent injunctive relief ordering Defendants to cease this unfair competition.

176.     Plaintiffs are entitled to recover their reasonable attorneys' fees and costs pursuant to 815 ILCS § 510/3.

### COUNT VII
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1 *et seq.*)

177.     Plaintiffs reallege and incorporate by reference paragraphs 1 – 176 as if fully set forth herein.

178.     The acts of Defendants complained of herein constitute fraud and deceptive business practices in violation of 815 ILCS 505/1 *et seq.*

179.     Defendants' actions are deliberate and willful.

180.     Plaintiffs have sustained injury, damage, and loss in Illinois based on Defendants' actions.  Defendants' actions directly or indirectly affected Illinois.

181.     Plaintiffs are entitled to recover their reasonable attorneys' fees and costs pursuant to 815 ILCS § 505/10a.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.     Judgment be entered for Plaintiffs on all of their respective claims.

B.     A finding that Defendants' acts constitute a violation of the claims alleged in Counts I through VII.

C.     That Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents,

subsidiaries, related corporations and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

> (1)     Using in substance or effect Plaintiffs' TOTAL LIFT BED mark, or any other mark that is a colorable imitation of, or is confusingly similar to that mark or any other mark or designation of Plaintiffs;

> (2)     Imitating, copying, duplicating, circulating, selling, or otherwise disposing of any product or material which bears any copy or colorable imitation of the TOTAL LIFT BED mark;

> (3)     Manufacturing, producing, distributing, circulating, selling, or otherwise disposing of any product or material which bears any copy or colorable imitation of the TOTAL LIFT BED mark;

> (4)     Doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendants are affiliated with, connected to, sponsored by, or approved or permitted by Plaintiffs or Plaintiffs' goods;

> (5)     Representing in substance or effect that Defendants are an exclusive distributor of Plaintiffs or Plaintiffs' goods;

> (6)     Using false representations or descriptions in commerce or using false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs or as to the origin, sponsorship, or approval of Defendants' or Plaintiffs' goods;

> (7)     Otherwise infringing Plaintiffs' common law rights in the TOTAL LIFT BED mark;

> (8)     Unfairly competing with Plaintiffs or otherwise injuring their business reputation in any manner;

> (9)     Reproducing, distributing, displaying, or using Plaintiffs' Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works in any manner; and

> (10)     Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (1) through (9).

D.     An accounting be directed to determine any and all of Defendants' profits or Plaintiffs' losses resulting from Defendants' activities, and that any such profits or losses be paid over to Plaintiffs and increased as the Court finds to be just under the circumstances of this case.

E.      That Plaintiffs be awarded their actual damages.

F.      That Plaintiffs be awarded their attorneys' fees and costs as available under the Copyright Act, 17 U.S.C. § 505.

G.      This Court declare this action to be "exceptional" within the meaning of 15 U.S.C. § 1117, and order Defendants to reimburse Plaintiffs their full costs and reasonable attorneys' fees incurred in this action as provided for thereunder.

H.      That Defendants be ordered to pay Plaintiffs their full costs and reasonable attorneys' fees pursuant to 815 ILCS §§ 505 *et seq.* and 510 *et seq*.

I.      That Defendants be directed to deliver up for destruction all printed and electronically stored materials in their possession or under their control bearing all or part of Plaintiffs' TOTAL LIFT BED mark, or Plaintiffs' Total Lift Bed Brochure, Total Lift Bed and Total Lift Bed 2 works, and all plates, molds, matrices, and other means of making or duplicating the same.

J.      That Defendants be required to pay over to Plaintiffs an award of treble Plaintiffs' actual damages and Defendants' profits, together with profits resulting from sales by Defendants relating to their trademark infringement, unfair competition, and false advertising pursuant to 15 U.S.C. § 1117 (a) and (b).

K.      That Defendants be required to pay to Plaintiffs an amount of money for Plaintiffs to effectively engage in a corrective advertising campaign to undo the damage to their business caused by Defendants.

L.      That Defendants be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

M.    For prejudgment interest on any award.

N.    That Plaintiffs be awarded such other and further relief as this Court may deem equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a jury trial on all issues so triable.

Dated:  May 25, 2016                    Respectfully submitted,

                                        By: */s/ James J. Lukas, Jr.*
                                        Richard D. Harris
                                        James J. Lukas, Jr.
                                        Matthew J. Levinstein
                                        Benjamin P. Gilford
                                        GREENBERG TRAURIG, LLP
                                        77 West Wacker Drive, Suite 3100
                                        Chicago, IL 60601
                                        Email: harrisr@gtlaw.com
                                        Email: lukasj@gtlaw.com
                                        Email: levinsteinm@gtlaw.com
                                        Email: gilfordb@gtlaw.com
                                        Telephone: (312) 456-8400
                                        Facsimile: (312) 456-8435

                                        *Counsel for Plaintiffs VitalGo, Inc. and VitalGo Systems Ltd.*