**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VITALGO, Inc. and VITALGO SYSTEMS LTD., | ) | |
| | ) | Case No. 16-cv-5577 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| KREG THERAPEUTICS, INC. and | ) | |
| CRAIG POULOS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs VitalGo, Inc. and VitalGo Systems Ltd. bring this action against Defendants Kreg Therapeutics, Inc. and Craig Poulos alleging copyright and trademark infringement and unfair competition under federal and state law. Currently before the Court is Defendants' motion to dismiss [18]. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion. Defendants' motion to dismiss [18] is denied as to any claims based on the Kreg Catalyst Bed and granted as to Plaintiffs' remaining claims, without prejudice to Plaintiffs seeking leave to amend VitalGo, Inc.'s counterclaims in the 2011 Lawsuit, *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, No. 11-cv-6771. The present action is set for further status hearing on April 19, 2017 at 9:00 a.m.

**I.      Background**

Plaintiff VitalGo, Inc. and Defendant Kreg Therapeutics, Inc. have been engaged in litigation before this Court for a considerable period of time. In fact, that litigation predates the filing of the current suit and is ongoing. The Court will set out the factual and procedural background of this longstanding litigation as it pertains to the current action. See *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (explaining that a court may take judicial notice

of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment).

Plaintiff VitalGo Systems, Ltd. ("VSI") is a foreign corporation based in Nicosia, Cyprus. VSI designed and developed the "Total Lift Bed," a hospital-grade bed that can elevate a patient from lying down to a fully-standing position. Plaintiff VitalGo, Inc. ("VitalGo") is a Delaware corporation that produces and sells the Total Lift Bed in North America. Defendant Kreg Therapeutics, Inc. ("Kreg") is an Illinois corporation that provides specialty medical equipment to hospitals and nursing homes. Defendant Craig Poulos is the president of Kreg.

On or about December 23, 2009, Kreg and VitalGo entered into an agreement ("the Agreement") pursuant to which Kreg was granted the exclusive right to distribute the Total Lift Bed in certain regions of the country ("the original territories") in exchange for its agreement to commit to purchase minimum quantities of the bed. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2013 WL 1286681, at *2 (N.D. Ill. Mar. 28, 2013). On April 6, 2010, Kreg and VitalGo executed an amendment ("the Amendment") to the Agreement, which added additional territories. *Id.* at *4.

In April 2011, a consultant emailed Ohad Paz, VitalGo's Managing Director and CEO, notifying him that Poulos was "calling the beds the Kreg bed" and that Kreg was sponsoring a trial of the bed at Johns Hopkins.[1] *Id.* at *5. Paz responded, "The fact that he is making a study is good for us. Why should we fight it. It is for the Total Lift Bed. We will act when the time is right for us. I am in waiting position." Paz continued, "The fact he is calling the bed KREG bed is a Joke, as we can decide at any time not to sell him beds and in such case he has no beds." *Id.*

---

[1] Kreg marketed the Total Lift Bed to its clients across the country by developing protocols and sponsoring in-hospital trials and studies involving the beds. *Id.* at *5.

In early May 2011, a vendor e-mailed Paz photographs that the vendor had taken of Kreg's booth at a convention. The vendor noted that "[o]ne of the beds have [sic] different wheels installed," and "there was no VitalGo nameplates on the beds at all." Paz wrote back, "We have problems with the guy. He is making changes with the beds without notifying us, although we told him he must." *Id.* at *6.

On June 2, 2011, Paz sent Poulos an email and letter of notice that the parties' agreements were terminated. In the email, Paz asserted that "the agreements are terminated" because "you did not make any commitment for purchase of our products for 2011, as you should have, in order to keep your exclusivity." He requested that Kreg "immediately refrain from any further representation in regard to your status as our exclusive distributor in any of the territories." *Id.* Meanwhile, Paz was talking with RecoverCare, another medical supply company, to establish an agreement pursuant to which RecoverCare would distribute the Total Lift Beds. *Id.* On June 2, 2011, Paz emailed a RecoverCare representative indicating that Kreg's exclusivity ended and noting that Kreg "is also in violation of the agreement as [they are] using our trademark and [were] supposed to show us any advertisement [they are] making." *Id.*; [2011 Lawsuit, 79-25].

Poulos responded to Paz's June 2 correspondence via email on June 6, 2011. He noted that he was "disappointed to receive [Paz's] letter" because "[Kreg] has spent countless hours, money and resources to build the reputation, market and to support your products in our exclusive territories where we have introduced your products to our hard-earned loyal clients. [Kreg] never would have made these expenditures and introductions but for the fact that our territories are exclusive and we believed our agreements would continue at least through February 1, 2012." Poulos averred that Kreg was "willing to agree to commit to future minimum

purchases in 2011" if VitalGo were able to update it on "certain latent design issues with the Total Lift Beds" and "the production status of Total Lift Bariatric Beds," which the Agreement had contemplated but which had not yet come to fruition. *Id.* at *7.

On June 8, 2011, Paz responded to Poulos with a lengthy letter. He reiterated his position that "[t]he two agreements had expired on January 31st and May 31st, respectively," and that Kreg had failed to give VitalGo its commitment to purchase additional beds before the January 31, 2011 deadline. Paz also disputed Poulos's allegations that there were design flaws in the Total Lift Bed and contended that Kreg had impermissibly made modifications to the Total Lift Beds without VitalGo's consent. *Id.*

On June 15, 2011, VitalGo and RecoverCare issued a press release announcing a "partnership to launch the Total Lift Bed$^{TM}$." On September 15, 2011, Kreg sent VitalGo a purchase order for five Total Lift Beds. VitalGo declined to fill the purchase order for the beds. *Id.* at *8.

## A.    The 2011 Lawsuit

On September 26, 2011, Kreg brought suit against VitalGo alleging that Kreg was the exclusive distributor of the Total Lift Beds in the original and additional territories through May 31, 2002 under the Agreement and the Amendment, (collectively "the agreements"), and that VitalGo breached the agreements by claiming in June 2011 that the agreements had expired and thereafter refusing to sell beds to Kreg, (the "2011 Lawsuit"). On October 17, 2011, VitalGo counterclaimed, alleging that Kreg violated the Agreement by making unauthorized alterations to the Total Lift Bed without VitalGo's prior written approval, even after VitalGo demanded that Kreg stop, [2011 Lawsuit, 26 (VitalGo's Answer and Counterclaim), at ¶¶ 19–24], and by failing

to obtain VitalGo's approval of all advertisements and promotional materials Kreg used to promote and sell the Total Lift Beds, [*id.* at ¶¶ 17–18].

The Court ruled on the parties' cross-motions for summary judgment on Kreg's claim on March 28, 2013. [2011 Lawsuit, 93.] The Court concluded that as to the original territories, Kreg established the first three elements of a claim for breach of contract under New York Law[2]: (1) the existence of a contract, (2) Kreg's own performance, and (3) VitalGo's breach. However, the Court held that Kreg had not demonstrated damages and was thus not entitled to a permanent injunction. *Id.* at *17. Nevertheless, the Court noted that it could not preclude the possibility that the VitalGo's breach "resulted in the kinds of damages that Kreg anticipated but was not (yet) able to prove," and thus Kreg might be entitled to alternative relief. *Id.* The Court later set a damages bench trial for March 9, 2015. [2011 Lawsuit, 152, 153.]

As to VitalGo's claim that Kreg violated Paragraph 5 of the Agreement by making unauthorized alterations to the Total Lift Bed without VitalGo's prior written approval, the Court concluded that Kreg did not breach the agreement by altering the beds because nothing in the Agreement or the Amendment prohibited Kreg from doing so. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2013 WL 1286681, at *13. The Court noted that Paragraph 12 of the Agreement prohibits Kreg from using or referring to VitalGo's trademarks and trade names "except as specified in this Agreement or as expressly authorized by Company in writing" but says nothing about altering the beds or referring to them as "Kreg Beds." *Id.*

## B. The 2014 Bankruptcy

However, before damages could be determined at the bench trial, VitalGo filed for bankruptcy in December 2014, causing the 2011 Lawsuit to be stayed. [2011 Lawsuit, 155.]

---

[2] The parties did not dispute that New York law, as provided in the Agreement and the Amendment, governs their breach of contract claims. *Id.* at *10.

Kreg alleges, and VitalGo does not dispute, that VitalGo filed for bankruptcy to avoid the impending damages trial. [17, at 1; *In re VitalGo, Inc*,. No. 14-36711 (Bankr. S.D. Fla. Dec. 5, 2014).] On January 23, 2015, VitalGo filed its Summary of Schedules in the bankruptcy case and represented under penalty of perjury that it did not possess any "contingent and unliquidated claims of any nature, including * * * counterclaims of the debtor and rights to setoff claims." Similarly, in its April 15, 2015 Disclosure Statement, VitalGo stated that it had not identified any causes of action to pursue.

Shortly after Kreg moved to appoint a Chapter 11 trustee and the bankruptcy court set an evidentiary hearing on Kreg's motion, VitalGo moved for a voluntary dismissal of its bankruptcy, which the bankruptcy court granted in December 2015.[3] On March 24, 2016, this Court reinstated the 2011 Lawsuit and reset the damages bench trial. [2011 Lawsuit, 167.] The bench trial was held on September 26 and 27, 2016 [see 2011 Lawsuit, 214, 215], and a schedule for post-trial briefs will be set as soon as the trial transcripts are available.

C.    **The 2016 Lawsuit**

On May 25, 2016, VitalGo and VSI filed the current lawsuit asserting claims against Kreg and Poulos for copyright infringement, false designation of origin under the Lanham Act, false advertisement under the Lanham Act, common law trademark infringement, common law unfair competition, violation of the Illinois Uniform Deceptive Trade Practices Act, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. [1, at ¶ 2.] Plaintiffs allege that they first began using the VitalGo and Total Lift Bed marks in the United States in 2008. [*Id.* at ¶ 14.] They further allege that in approximately 2008, they began showing the Total Lift Bed in advertising and marketing materials and that VSI has filed copyright

---

[3] VSI initially moved to dismiss VitalGo's bankruptcy, and VitalGo later joined VSI's motion to dismiss.

applications for one of its brochures and two digital renderings or pictures of its Total Lift Bed, (collectively, the "Copyrighted Works"). [*Id.* at ¶¶ 14, 18.]

Plaintiffs allege that since October 2011, Defendants marketed the Total Lift Bed on their website, in their brochure, in studies, and at conferences as an "Exclusive Kreg Product" or as a "Kreg Bed" and used Plaintiff's Copyrighted Works. [*Id.* at ¶¶ 29, 36–44, 47, 71, 76.] Plaintiffs further allege that in 2010 or 2011, Defendants began making modifications to Plaintiffs' Total Lift Beds but still advertised the beds as Total Lift Beds. [*Id.* at ¶¶ 31–35, 77–79.] Finally, Plaintiffs contend that in 2014, Defendants developed the competing Kreg Catalyst Bed, and until March 2016, promoted the Catalyst Bed using the Total Lift Bed mark and Plaintiff's Copyrighted Works. [*Id.* at ¶¶ 67, 80.] Plaintiffs seek, among other forms of relief, an injunction, damages, and attorneys' fees and costs under the Copyright Act, 17 U.S.C. § 505. [*Id.* at 35–38.] On July 18, 2016, Defendants filed a motion to dismiss [18], which is currently before the Court.

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements

of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment. *Henson*, 29 F.3d at 284.

## III. Analysis

Defendants Kreg and Poulos move to dismiss the 2016 Lawsuit on multiple grounds. Defendants argue that (1) the claims in the 2016 Lawsuit arise from the same operative facts as VitalGo's counterclaims in the 2011 Lawsuit and therefore cannot be alleged in an independent suit; (2) Plaintiffs are judicially estopped from asserting their claims because they knew of but failed to disclose these claims in the 2014 Bankruptcy; (3) no factual allegations demonstrate Defendant Poulos' personal liability; (4) the doctrine of laches bars Plaintiffs' Lanham Act claims; (5) Plaintiffs do not allege actual consumer reliance on Defendants' alleged misleading advertisement as necessary to support its Lanham Act claims; and (6) Plaintiffs cannot seek attorneys' fees under the Copyright Act because its copyright registrations are untimely.

### A. Claim-Splitting

Defendants first argue that Plaintiffs' claims in the present suit must be dismissed because they arise from the same set of operative facts underlying VitalGo's counterclaims in the 2011 Lawsuit. Under the doctrine of claim splitting, a form of *res judicata*, a party cannot split a

cause of action into separate grounds of recovery and bring successive lawsuits. *Nalco Co. v. Chen*, 843 F.3d 670, 674 (7th Cir. 2016); *Kim v. Sara Lee Bakery Grp., Inc.*, 412 F. Supp. 2d 929, 941 (N.D. Ill. 2006). Rather, a party must bring in one lawsuit "all legal theories arising out of the same transaction or series of transactions." *Kim*, 412 F. Supp. 2d at 941; see also *Wilson v. City of Chicago*, 120 F.3d 681, 686 (7th Cir. 1997) ("Two claims arising from the same set of facts are one claim for *res judicata* purposes, and may not be split * * * by making each claim the subject of a separate suit[.]"); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("As a general rule, a federal suit may be dismissed for reasons of wise judicial administration * * * whenever it is duplicative of a parallel action already pending[.]" (citation and internal quotation marks omitted) (alteration in original)). Unlike *res judicta*, the doctrine of claim splitting applies before there is a final judgment in a prior action. *Anderson v. Guaranteed Rate, Inc.*, 2013 WL 2319138, at *4 (N.D. Ill. May 28, 2013); *Kim*, 412 F. Supp. 2d at 941–42; *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906, at *4 (N.D. Ill. May 2, 2005) (collecting cases).

### 1. Claims Based on (1) Modifications to the Total Lift Bed and (2) Marketing Materials

Here, the doctrine of claim splitting precludes Plaintiffs from bringing claims based on Defendants' modifications to the Total Lift Bed and Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed. In the 2011 Lawsuit, VitalGo brought a counterclaim against Kreg alleging that Kreg violated the Agreement by making unauthorized alterations to the Total Lift Bed without VitalGo's prior written approval. [2011 Lawsuit, 26, at ¶¶ 19–24.] Plaintiffs' claim in the current lawsuit that Defendants modified the Total Lift Bed but still advertised the beds using Plaintiffs' Total Lift Bed trademark and Copyrighted Works is based on the same set of operative facts underlying VitalGo's counterclaim in the 2011 Lawsuit.

See *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (explaining that claim splitting in duplicative lawsuits is a litigation tactic that *res judicata* is meant to prevent); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2013 WL 5951505, at *3 (N.D. Ill. Nov. 7, 2013) (holding that where the set of facts that gave rise to the earlier federal suit were the exact same set of facts underlying the claims in the second suit, the doctrine of claim splitting barred plaintiffs' claims).

Similarly, in the 2011 Lawsuit, VitalGo alleged that Kreg violated the Agreement by failing to obtain VitalGo's approval of all advertisements and promotional materials Kreg used to promote and sell the Total Lift Beds. [*Id.* at ¶¶ 17–18.] And Plaintiffs' claims in the current lawsuit that Defendants' advertisements and promotional materials (including their website, brochures, and materials for conferences and studies) infringed on Plaintiff's Total Lift Bed trademark and Copyrighted Works are based on the same set of operative facts: Kreg's advertising of the Total Lift Beds. See *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1081 (7th Cir. 2011) (explaining that the "principle *that res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." (citation and internal quotation marks omitted)). Although VitalGo brought its counterclaims under a breach of contract theory and Plaintiffs frame their current claims as intellectual property violations, simply changing the legal theory does not permit a plaintiff to bring separate suits arising from the same transaction. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) ("[A plaintiff] cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory. That is called 'claim splitting[.]'"); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) ("[A]

mere change in the legal theory does not create a new cause of action." (citation and internal quotation marks omitted)).

The Court also notes that the parties' arguments related to the permissive/compulsory counterclaims distinction are "red herring[s] for current purposes." *Nalco*, 843 F.3d at 674 (7th Cir. 2016). On one hand, Defendants argue that Plaintiffs' claims in the current lawsuit are compulsory counterclaims in the 2011 Lawsuit and thus cannot be brought in a separate lawsuit. On the other hand, Plaintiffs contend that their intellectual property claims are permissive counterclaims in the 2011 Lawsuit and thus they were not required to bring them in 2011. However, this argument would be relevant only if VitalGo had done nothing but defend against Kreg's breach of contract claim in the 2011 Lawsuit. Since VitalGo elected to take the offensive by asserting counterclaims in the 2011 Lawsuit, VitalGo was "obliged to raise all claims that stem from the same transaction." *Id.* (explaining that when a defendant in a civil action elects to assert counterclaims, the rule against claim splitting obligates it to raise all claims that stem from the same transaction or series of related transactions, even if some of those counterclaims would have been permissive). As Seventh Circuit explained in *Nalco*, 843 F.3d at 674, the rule against claim splitting extinguishes a claim by the plaintiff against the defendant even if the plaintiff in the second action presents theories of the case not presented in the first action or seeks remedies not demanded in the first action. *Id.*

Plaintiffs make several arguments as to why the doctrine of claim splitting should not apply here. First, Plaintiffs argue that "the law is clear that a breach of contract does not arise out of the same transaction or occurrence as a copyright infringement, trademark infringement, and/or unfair competition claim." [25, at 9.] Plaintiffs' attempt to set forth a categorical rule fails because courts utilize a case-by-case approach to determine if a particular factual situation

constitutes a single transaction or occurrence. Cf. *Thomas v. Chestnutt Hill Apartments*, 2010 WL 4806990, at *1 (E.D. Wis. Nov. 22, 2010). Here, the facts underlying Plaintiffs' breach of contract counterclaims are the same facts underlying their new intellectual property claims, thus all claims arising from these facts must have been brought in the same suit or lost. Cf. *Cummins, Inc. v. TAS Distrib. Co.*, 676 F. Supp. 2d 701, 710 (C.D. Ill. 2009), aff'd, 700 F.3d 1329 (Fed. Cir. 2012) (holding that where patent invalidity claims were "certainly related in time, space, origin, and motivation to the breach of contract at issue" in a prior lawsuit, the patent invalidity claims were barred by *res judicata*); see also *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost.").

Next, Plaintiffs argue that their intellectual property claims involve facts and issues that did not develop until *after* VitalGo filed its counterclaims in the 2011 Lawsuit, and thus they could not have brought these intellectual property claims in the 2011 Lawsuit. [25, at 10.] To support this argument, Plaintiffs rely on the following allegations from their complaint: as of December 7, 2015, Defendants' website stated "KREG introduces the Total Lift Bed[TM]," [1, at ¶ 36]; as of December 30, 2015, Defendants' website used Plaintiffs' Total Lift Bed mark and Copyrighted Works, and stated "Our patented technology gently raises the patient to a standing position," and "Exclusive in Illinois, Indiana, Wisconsin, Atlanta (Ga.), Jacksonville, Orlando and Tampa/Ft. Myers (Fla.), Philadelphia, Trento [sic] and Camden (NJ), & St. Louis (Mo.)," [*id.* at ¶¶ 37–41, 71].

However, although these allegations concern activity in December 2015, the activity is merely a continuation of conduct that Plaintiffs were aware of prior to bringing their

counterclaims in the 2011 Lawsuit on October 17, 2011.[4] In April 2011, Paz, VitalGo's Managing Director and CEO, was notified that Poulos was calling the Total Lift Bed the "Kreg bed." *Kreg Therapeutics*, 2013 WL 1286681, at *5. By at least June 2, 2011, Paz was aware that Kreg was using VitalGo's trademarks in their advertising. *Id.* at *6; [2011 Lawsuit, 79-25]. And Plaintiffs allege in their complaint that in October 2011, Plaintiffs asked Defendants to cease and desist from asserting that Kreg remained an exclusive distributor of Plaintiffs' Total Lift Bed. [1, at ¶¶ 28–29.] Thus, Plaintiffs could have asserted their intellectual property claims related to this conduct in the 2011 Lawsuit. See *Pennsylvania Chiropractic Ass'n*, 2013 WL 5951505, at *3 (rejecting plaintiffs' argument that the doctrine of claim splitting did not apply because they remained vulnerable to violations not addressed in the original action); cf. *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (*res judicata* bars claims that were actually litigated or could have been litigated in another lawsuit).

Further, the Court is not convinced by Plaintiffs' argument that their intellectual property claims could have not accrued until after the Agreement between Kreg and VitalGo ended on May 31, 2012 and after the Court ruled on the parties' motions for summary judgment on March 28, 2013. [25, at 10.] Plaintiffs took the position in the 2011 Lawsuit that the Agreement giving Kreg exclusive distributorship as to the original territories ended by June 2011 because Kreg did not commit to minimum purchase requirements as required to keep its exclusivity. See *Kreg Therapeutics*, 2013 WL 1286681, at *6 (noting that on June 2, 2011, Paz notified Poulos that the parties' agreements were terminated and requesting that Kreg "immediately refrain from any further representation in regard to [its] status as [VitalGo's] exclusive distributor in any of the territories"). Similarly, Plaintiffs allege in their complaint that in October 2011, Plaintiffs asked

---

[4] The Court will discuss separately Plaintiffs' allegations concerning Defendants' introduction of their competing Kreg Catalyst Bed in 2014 and their alleged use of Plaintiffs' Total Lift Bed trademark and Copyrighted Works to introduced and promote sales of the Catalyst Bed.

Defendants to "cease and desist from asserting that [Defendants] remained an exclusive distributor of Plaintiffs' Total Lift Bed." [1, at ¶¶ 28–29.] Thus, Plaintiffs had no reason to wait until the Court concluded on March 28, 2013 that the Agreement ended on May 31, 2012 to bring their intellectual property claims. Plaintiffs' claims that Defendants infringed on their intellectual property by using Plaintiffs' trademarks and Copyrighted Works after the Agreement between Kreg and VitalGo ended would have been perfectly consistent with VitalGo's position in the 2011 Lawsuit that the Agreement ended by June 2011.

Finally, Plaintiffs argue that since VitalGo's affiliate VSI and Kreg's owner and president Poulos were not parties to the 2011 Lawsuit, the doctrine of claim-splitting does not apply. [25, at 10–11.] However, "just as the adoption of a new legal theory will not salvage litigation arising from a set of facts that has already been litigated, a party may not avoid the rule against claim splitting by slightly altering the parties in subsequent actions." *Pennsylvania Chiropractic Ass'n*, 2013 WL 5951505, at *3 (citing *Zarnecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011)). If the new parties are in privity with the parties in the original action, the doctrine of claim splitting will apply. See *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1048 (N.D. Ill. 2005). Courts apply a "functional approach" to determining whether parties are in privity. *Serv. Employees Int'l Union Local 1 v. Digby's Detective & Sec. Agency, Inc.*, 2009 WL 721003, at *2 (N.D. Ill. Mar. 18, 2009). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Chicago Title Land Trust Co.*, 664 F.3d at 1080 (citation and internal quotation marks omitted).

Here, Poulos, a Defendant in the current action, is in privity with Kreg, which was the only Counter-Defendant in the 2011 Lawsuit. Plaintiffs allege that Poulos is the founder, owner, president, and CEO of Kreg, [1, at ¶ 81], and Seventh Circuit case law dictates that Poulos is

thus in privity with Kreg. *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.*, 76 F.3d 128, 131 (7th Cir. 1996) (president of company was "clearly in privity' with his company); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 (7th Cir. 1986) (holding that even though a bank was the only actual party in the first action, the other defendants in the second action were in privity with the bank for purposes of *res judicata* because they were directors, officers, employees, and attorneys of the bank).

In addition, VSI (VitalGo Systems, Ltd.), a Plaintiff in this action, shares a sufficient identity of interest with its affiliate VitalGo, which was the Counter-Plaintiff in the 2011 Lawsuit, that VSI is in privity with VitalGo. See *Serv. Employees Int'l Union Local 1*, 2009 WL 721003, at *3 (explaining that although the parties were "nominally different," they shared the same legal interests, and were thus in privity). Plaintiffs allege in their complaint that VSI, a corporation based in Nicosia, Cyprus, established VitalGo NA LLC in 2008 for the purpose of distributing the Total Lift Bed in North America. [1, at ¶¶ 4, 13.] According to Plaintiffs, VSI and VitalGo NA LLC signed a license and distribution agreement, which granted VitalGo NA LLC the right to use VSI's intellectual property. [*Id.* at ¶ 13.] Plaintiffs contend that in March 2009, VitalGo NA LLC transferred its assets and operations to Plaintiff VitalGo, a Delaware corporation. [*Id.* at ¶¶ 3, 13]; see *Pet Prod. Innovations, LLC v. Paw Wash, LLC*, 2012 WL 2022038, at *7 (N.D. Ill. June 5, 2012), ("[T]he Seventh Circuit has made it clear that the purchaser of a company's assets may be in privity with the seller, even without common ownership."). Plaintiffs further contend that VSI signed a new license agreement with VitalGo, granting VitalGo the exclusive right to produce and sell the Total Lift Bed in North America, and the nonexclusive right to use the VitalGo and Total Lift Bed marks, among other marks and intellectual property. [*Id.* at ¶ 13.] Additionally, VSI stated in its motion to dismiss VitalGo's

2014 Bankruptcy that "Paz formed [VSI] and Vitalgo [sic] to commercialize the Total Lift Bed Technology" and that "in 2009, [VSI] formed Vitalgo, [sic] a Delaware corporation." [17, Exhibit O, at 4.] VSI also asserted that although the ownership of VSI and VitalGo is not identical, it is overlapping. [*Id.*]

Further, the record in VitalGo's bankruptcy establishes that Paz is the CEO of both VSI and VitalGo, VSI has no employees other than Paz, VSI is a 12% owner of VitalGo, and the same four individuals collectively own 65% of both VSI and VitalGo. [35, at 6 (citing *In re VitalGo*, No. 14-36711-RBR, 139, at 2 (Bankr. N.D. Ill. Dec. 8, 2015)).] Finally, Plaintiffs refer to themselves collectively as "Plaintiffs" in their complaint and do not plead any facts from which the Court can infer that they do not share legal interests. [See, *e.g.*, 1, at ¶ 14 ("Plaintiffs first began using the [VitalGo] and [Total Lift Bed] marks in the United States in 2008. Since that time, Plaintiffs have made widespread, consistent and continuous use of the [VitalGo] and [Total Lift Bed] marks in interstate commerce in association with their Total Lift Bed. As a result, Plaintiffs enjoy the exclusive right to use the [VitalGo] and [Total Lift Bed] marks in the United States in connection with the goods provided by Plaintiffs."); ¶ 25 ("Notwithstanding Plaintiffs' exclusive and senior rights in and to the [Total Lift Bed] mark * * * Defendants have used and/or continue to use Plaintiffs' [Total Lift Bed] mark both with and without Plaintiffs' Copyrighted Works[.]").]

Thus, the Court concludes that the addition of VSI as a Plaintiff and Poulos as a Defendant to the current lawsuit does not preclude the application of the doctrine of claim splitting. See *Nalco*, 843 F.3d at 672 (noting that plaintiff's argument that the doctrine of claim splitting did not apply because plaintiff named a defendant in the second action who was not party to the first action was a "questionable proposition even if [the new defendant] were a

distinct entity [from the original defendant], for federal courts no longer require mutuality in civil litigation," and ultimately rejecting this argument because the two allegedly separate defendants were just "different names for the same thing"); cf. *Aetna Cas. & Sur. Co. of Hartford, Connecticut v. Kerr-McGee Chem. Corp.*, 875 F.2d 1252, 1257 (7th Cir. 1989) (explaining that for *res judicata* purposes, the "same parties" requirement may be satisfied even though technically distinct corporate entities are involved in the various actions and concluding that the parent and the subsidiaries had sufficiently similar interests such that the "same parties" requirement was met); *Janusz v. Fasco Indus., Inc.* 1999 WL 162793, at *5 (N.D. Ill. Mar. 12, 1999) (explaining that the Seventh Circuit has held that for *res judicata* purposes, a corporation and its subsidiaries are in privity). The doctrine of claim splitting precludes Plaintiffs from bringing claims based on Defendants' modifications to the Total Lift Beds and Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed.

Finally, the Court notes that Plaintiffs state in a footnote: "Should the Court find that any of Plaintiffs' IP Claims are compulsory counterclaims or constitute claim splitting, then Plaintiffs respectfully request leave to amend VitalGo's counterclaims in the pending Kreg Breach Case[.]" [25, at 12 n.16.] Plaintiffs' embedding of a request for leave to amend in a footnote of a response brief is improper. See *Capital Mach. Co. v. Miller Veneers, Inc.*, 2012 WL 243563, at *3 (S.D. Ind. Jan. 25, 2012) (denying a request for leave to amend buried in a response brief rather than in a separate motion with independent briefing); *Novak v. State Parkway Condominium Ass'n*, 2015 WL 1058014, at *4 (N.D. Ill. Mar. 6, 2015) (reserving ruling on a request for leave to amend until plaintiffs have "made a proper motion for leave to amend rather than act on a request imbedded in a response brief," so that the parties may properly brief the relevant issues). If VitalGo wishes to pursue these claims in the 2011 Lawsuit, it must file a

motion for leave to amend its counterclaims in that action. The Court expresses no opinion on whether such a motion would have merit and would allow full briefing on the motion before ruling on it.

### 2. Claims Based On The Kreg Catalyst Bed

However, Plaintiffs' claims based on Defendants' marketing of the Kreg Catalyst Bed in 2014 using Plaintiffs' intellectual property are not barred by the doctrine of claim splitting because they are based on facts that are separate and distinct from those underlying VitalGo's counterclaims in the 2011 Lawsuit. Specifically, Plaintiffs contend that on or about 2014, Defendants introduced their Catalyst Bed to compete with Plaintiffs' Total Lift Bed but failed to show their Catalyst Bed in marketing materials and on their website. [1, at ¶ 67.] Instead, until on or about March 2016, Defendants allegedly used Plaintiffs' Total Lift Bed mark and Plaintiffs' Copyrighted Works to introduce and to promote sales of Defendants' Catalyst Bed. [*Id.*] According to Plaintiffs, Defendants used the Total Lift Bed mark "to create consumer confusion and traffic off of Plaintiff's reputation and goodwill" under the Total Lift Bed mark. [*Id.*] Plaintiffs further allege that Defendants used Plaintiff's Copyrighted Works in conjunction with the Total Lift Bed mark to introduce and to promote sales of Defendants' Catalyst Bed. [*Id.* at ¶¶ 67, 80.] Plaintiffs contend that Defendant Poulos filed a provisional patent application related to the Kreg Catalyst Bed on April 18, 2014 and a non-provisional patent application on April 18, 2015, and that Defendant Poulos' patent application was published on October 22, 2015. [*Id.* at ¶ 68.]

Since Plaintiffs' claims related to Defendant's marketing of their Catalyst Bed using Plaintiffs' intellectual property are based on underlying facts that are separate and distinct from

those underlying VitalGo's counterclaims in the 2011 Lawsuit, Plaintiffs may proceed on these claims in the current action.

### B.    Judicial Estoppel

Defendants also argue that VitalGo's failure to disclose its supposedly new claims against Defendants in the now-dismissed 2014 Bankruptcy precludes Plaintiffs from bringing their claims in the current lawsuit. Defendants contend that in VitalGo's January 23, 2015 Summary of Schedules and its April 15, 2015 Disclosure Statement, VitalGo represented to the bankruptcy court under oath that it did not possess any claims, counterclaims, or setoff rights against Kreg or others. According to Defendants, having made these representations and then having successfully sought dismissal of the 2014 Bankruptcy without amending its asset disclosure, VitalGo should now be judicially estopped from pursuing such claims.

Judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation. *Zedner v. United States*, 547 U.S. 489, 504 (2006). The doctrine "is invoked to protect the integrity of the judicial process by estopping parties from asserting contradictory positions in court to derive an unfair advantage." *Burns v. Village of Crestwood*, 2013 WL 352784, at *3 (N.D. Ill. Jan. 29, 2013); see also *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (Judicial estoppel is "intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."). Judicial estoppel is an equitable doctrine that cannot be reduced to a precise formula or test, see *Zedner*, 547 U.S. at 504, and it is a matter of discretion. *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004). Three factors that inform the decision about whether to apply judicial estoppel are: (1) whether the later position is clearly inconsistent with the earlier position; (2) whether the party to be estopped succeeded in persuading the first court to accept its

earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (citation and internal quotation marks omitted).

Here, VitalGo did not persuade the bankruptcy court to accept its earlier position that VitalGo did not possess any claims, as the bankruptcy court rejected VitalGo's proposed reorganization plan in August 2015, and VitalGo did not obtain the benefit of a discharge. Additionally, VitalGo moved for voluntary dismissal of its bankruptcy, which the bankruptcy court granted in December 2015. Thus, even though VitalGo's bankruptcy filing was neither well-intended nor well-taken by the bankruptcy court, a careful review of Seventh Circuit precedent leaves the Court disinclined to conclude that Plaintiffs are judicially estopped from bringing their claims. See *United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001) (noting that there is a minority view that "judicial estoppel applies even where no court has accepted the prior assertion if the party taking contrary positions demonstrates an intent to play 'fast and loose' with the courts," but explaining that this is "clearly not the view of" the Seventh Circuit); see also *Williams v. Airborne Express Inc.*, 2006 WL 932347, at *2–3 (N.D. Ill. Apr. 11, 2006) (judicial estoppel did not apply where plaintiff failed to disclose claim to bankruptcy court, but bankruptcy court dismissed plaintiff's petition before a reorganization plan was confirmed, and thus plaintiff did not prevail on his prior position); cf. *Fricke v. Healthcare Revenue Recovery Group, LLC*, 2015 WL 4778527, at *4 (N.D. Ill. Aug. 12, 2015) (holding that judicial estoppel did not apply even though "plaintiff may have received a number of benefits from her bankruptcy, such as an automatic stay pursuant to 11 U.S.C. § 362").

Defendants argue that it is immaterial that VitalGo did not receive a discharge because VitalGo received "a significant benefit from its Chapter 11 bankruptcy filing—the automatic stay that delayed the damages trial on Kreg's breach of contract claim in the 2011 Lawsuit." [35, at 9.] To support their argument, Defendants rely on *Williams v. Hainje*, 375 Fed. App'x 625 (7th Cir. 2010), but *Williams* is distinguishable from the case at hand. In *Williams*, the Seventh Circuit held that judicial estoppel applied where the plaintiff's lawsuit had been pending for nearly two years when the plaintiff filed for bankruptcy, and the plaintiff did not amend his personal property schedules to account for the lawsuit until after the defendant had discovered the omission and moved for summary judgment on judicial estopped grounds. *Id.* at 628. The Seventh Circuit explained that it was immaterial that the plaintiff never received a discharge because he still received "significant financial benefits during his short stint in bankruptcy," including the automatic stay, which held creditors at bay for about twenty months and enabled him to keep his house and car and to avoid new interest charges on his mortgage arrearage while he pursued his undisclosed lawsuit. *Id.* at 627.

However, in *Williams*, the bankruptcy court confirmed a reorganization plan that substantially reduced the plaintiff's debt. 375 Fed. App'x at 626. Thus, although the plaintiff's debts were not permanently discharged, he did receive preliminary benefits from concealing his lawsuit from the bankruptcy court. *Id.* In contrast, VitalGo's reorganization plan was never confirmed, and VitalGo's debts were not discharged. Although VitalGo was able to delay the damages trial on Kreg's breach of contract claim in the 2011 Lawsuit, any benefit VitalGo received was minimal. Additionally, the *Williams* bankruptcy was dismissed because the plaintiff defaulted on his reorganization payments. *Id.* at 627. VitalGo, on the other hand,

moved for a voluntary dismissal of its bankruptcy before the bankruptcy court relied on its nondisclosure.

Further, when the plaintiff in *Williams* filed for bankruptcy, his undisclosed lawsuit was active and well into discovery, and the court noted that the plaintiff's suit was on his mind as he prepared his bankruptcy disclosures because he reported as unsecured debt the medical expenses that he allegedly incurred from the injury underlying his lawsuit. *Id.* at 628. In contrast, Plaintiffs in the case at bar did not file this present lawsuit until May 25, 2016, about five months after the bankruptcy court dismissed VitalGo's bankruptcy. Thus, although the actions underlying their claims took place prior to VitalGo's filing for bankruptcy on December 5, 2014 and Plaintiffs were aware of the underlying facts, it is not clearly apparent that VitalGo purposefully concealed its claims from the bankruptcy court. See *Burns*, 2013 WL 352784, at *4 ("Courts generally consider a party's subjective intent in deciding whether to apply judicial estoppel.").

The other cases that Defendants cite in support of their argument for judicial estoppel are similarly distinguishable. See, *e.g.*, *Davis v. Mitsubishi Motors of N. Am., Inc.*, 2011 WL 4056072, at *2 (C.D. Ill. Sept. 8, 2011) (holding that judicial estoppel applied where plaintiff did not notify the bankruptcy court of the lawsuit he was actively pursuing even though plaintiff did not obtain a discharge of his debts, where plan was confirmed and bankruptcy was dismissed, at least in part, as a result of plaintiff's failure to make his required plan payments); *Karraker v. Rent-A-Center, Inc.*, 2005 WL 297652, at *1–3 (C.D. Ill. Nov. 7, 2005) (holding that even though plaintiff did not obtain a successful result in bankruptcy because he defaulted on his plan payments and the bankruptcy court thus dismissed his case, judicial estoppel barred plaintiff from asserting a claim he did not disclose to the bankruptcy court where plaintiff filed his lawsuit

prior to filing for bankruptcy and the bankruptcy court accepted and relied on the plaintiff's nondisclosure).  For all of these reasons, the Court declines to dismiss Plaintiffs' claims on judicial estoppel grounds.

### C.     Poulos' Personal Liability

Next, Defendants allege that all claims against Defendant Poulos should be dismissed because Plaintiffs have not alleged facts sufficient to make the requisite "special showing" that Defendant Poulos could be personally liable for Defendant Kreg's alleged wrongful conduct.  Under *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926) and progeny, officers are not personally liable for a corporation's infringement, even if the infringement was committed under their general direction.  A plaintiff seeking to hold an officer personally liable must make a "special showing" that the officer acted "willfully and knowingly" such as by "personally participat[ing] in the manufacture or sale of the infringing article (acts other than as an officer)," or by "[using] the corporation as an instrument to carry out his own willful and deliberate infringements."  *Specht v. Google, Inc.*, 660 F. Supp. 2d 585, 864 (N.D. Ill. 2009) (citation omitted) (alteration in original).

Here, Plaintiffs allege, among other things, that "Defendant Poulos willfully, knowingly, and/or actively participated in and supervised, the illegal and willfully infringing activities of Defendant Kreg, and used Defendant Kreg to carry out his illegal and willfully infringing activities."  [*Id.* at ¶ 97.]  Plaintiffs allege on information and belief that "Defendant Poulos personally authorized the use of Plaintiffs' Total Lift Bed Brochure, Total Lift Bed, and Total Lift Bed 2 works on Defendants [sic] Kreg's brochures, advertisements, website, and marketing materials," [*id.* at ¶ 106], and that "it was Defendant Poulos' decision to introduce Defendants' Catalyst bed to compete with Plaintiffs' Total Lift Bed and to not show Defendants' Catalyst bed

23

in marketing materials and on Defendants' website for almost two years," [*id.* at ¶ 110]. These allegations are enough to make the "special showing" needed to bring a personal liability claim against Defendant Poulos. See *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975, 977 (N.D. Ill. 2003) (holding that plaintiff's allegations were sufficient to state an individual claim against the corporation's officer where plaintiff alleged that the officer "personally directed and participated in allegedly infringing activity, as well as personally authoriz[ed] that activity"); cf. *FM Industries, Inc. v. Citicorp Credit Servs., Inc.*, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5. 2007) (plaintiffs did not make special showing required for individual liability where plaintiffs alleged only that defendants "engaged in unauthorized infringement as 'agent[ ] servants and employees of [defendant corporation]'").

Defendants argue that Plaintiffs' "conclusory allegations that Mr. Poulos 'willfully and knowingly' participated in Kreg's alleged infringement is [sic] mere conjecture." [17, at 12.] However, Plaintiffs need not prove any of their allegations in order to survive a motion to dismiss. See *Syscon, Inc.*, 274 F. Supp. 2d at 977. Additionally, it is of no import that some of Plaintiffs' allegations are made "on information and belief," as such allegations are acceptable under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a). *Syscon, Inc.*, 274 F. Supp. 2d at 977; *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1280 (N.D. Ill. 1996) (Unlike Rule 9, which is applicable to claims of fraud, Rule 8 has no requirement that the circumstances of the allegation be pleaded with particularity). Therefore, without expressing an opinion on whether Plaintiffs will be able to prove their claims against Defendant Poulos at a later stage in this litigation, Court concludes that Plaintiffs have sufficiently alleged that Defendant Poulos could be personally liable for Defendant Kreg's alleged wrongful conduct.

### D. Laches

Next, Defendants contend that Plaintiffs' claims are barred by the doctrine of laches. The doctrine of laches is derived from the maxim that those who sleep on their rights will lose them. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). For laches to apply, Defendants must demonstrate: (1) an unreasonable lack of diligence by Plaintiffs, and (2) prejudice arising therefrom. *Id.* Courts have recognized that even if the elements of laches are established, a court need not bar a plaintiff's suit, as the application of the laches defense is discretionary, and courts are to "look to all the facts and circumstances of the case and weigh the equities of the parties." *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, 2003 WL 21982141, at *11 (N.D. Ill. Aug. 20, 2003) (citation and internal quotation marks omitted).

Here, Plaintiffs allege that Defendants introduced their Catalyst Bed to compete with Plaintiffs' Total Lift Bed in around 2014 and used Plaintiffs' intellectual property to market the Kreg Catalyst Bed. They further contend that Defendant Poulos filed patent applications for the Catalyst Bed in 2014 and 2015. Plaintiffs brought this lawsuit on May 25, 2016. Based on this timeline, the Court declines to conclude that the doctrine of laches bars Plaintiffs' claims based on the Kreg Catalyst Bed.

The Court need not rule on how the doctrine of laches may apply to Plaintiffs' claims based on Defendants' modifications to the Total Lift Beds and Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed, as the Court has already concluded that those claims are barred by the doctrine of claim-splitting. If Plaintiffs file a motion for leave to amend their counterclaims in the 2011 Lawsuit, Defendants are not precluded from raising an argument based on laches.

### E.      Consumer Reliance

Defendants briefly argue that Plaintiffs do not allege actual consumer reliance on Defendants' allegedly misleading advertisements as required to state a false advertisement claim under the Lanham Act.  "In order to state a valid damages claim under the Lanham Act, a plaintiff must demonstrate that it has been damaged by actual consumer reliance on defendant's misrepresentations, for example a loss of sales, profits, or present value."  *Navistar Int'l Transp. Corp. v. Freightliner Corp.*, 1997 WL 729060, at *2 (N.D. Ill. Aug. 28, 1997).

Here, Plaintiffs allege that "Defendants' use of Plaintiffs' [Total Lift Bed] mark is likely to cause, *has caused*, and *is causing actual consumer confusion* in the marketplace as to the origin of Plaintiffs' hospital beds and Plaintiffs' affiliation with Defendants and Defendants' hospital beds."  [1, at ¶ 64 (emphasis added).]  They further allege that "Plaintiffs have sustained injury, damage, and loss based on Defendants' actions."  [*Id.* at ¶ 144.]  Thus, Plaintiffs have sufficiently alleged actual consumer reliance to survive a motion to dismiss.  Cf. *Navistar*, 1997 WL 729060, at *2 (plaintiff's allegation that it is "likely" to be injured by defendant's conduct was not enough to state a Lanham Act claim).  Again, Defendants' argument that these allegations are too conclusory fails because Plaintiffs need not prove any of their allegations in order to survive a motion to dismiss.  See *Syscon, Inc.*, 274 F. Supp. 2d at 977.

### F.      Attorneys' Fees under the Copyright Act

Finally, Defendants argue that Plaintiffs' claim for attorneys' fees pursuant to § 505 of the Copyright Act must be dismissed because Plaintiffs did not register the works at issue with the U.S. Copyright Office within three months of the works' publication as required by § 412 of the Copyright Act for an award of attorneys' fees.  See 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees * * *  shall be made for * * * any infringement of copyright

commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work"); *Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, 2013 WL 4011052, at *5 (N.D. Ill. Aug. 6, 2013) (explaining that § 412 provides that a copyright plaintiff seeking statutory damages or attorney fees for published works must complete copyright registration within three months of first publication). VSI's copyright applications were filed with the Copyright Office on March 22, 2016 but state that the works were first published in 2008. [1, Exhibits A–C.]

Plaintiffs do not respond to this argument and thus waive their right to contest a dismissal on this basis. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("As to the defendants' motion to dismiss the complaint, [plaintiff] waived his right to contest the dismissal by failing to oppose the motion[ ]."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (If a defendant provides plausible grounds for granting a motion to dismiss, the court will not "do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). Thus, Plaintiffs' claims for attorneys' fees pursuant to § 505 of the Copyright Act are dismissed.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [18]. Defendants' motion to dismiss [18] is denied as to any claims based on the Kreg Catalyst Bed and granted as to Plaintiffs' remaining claims, without prejudice to Plaintiffs seeking leave to amend VitalGo's counterclaims in the 2011 Lawsuit, *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, No. 11-cv-6771. The present action is set for further status hearing on April 19, 2017 at 9:00 a.m.

Date: March 29, 2017

Robert M. Dow, Jr.
United States District Judge