**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VITALGO, Inc. and VITALGO SYSTEMS LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-5577 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| KREG THERAPEUTICS, INC. and | ) | |
| CRAIG POULOS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs VitalGo, Inc. ("VitalGo") and VitalGo Systems Ltd. ("Plaintiffs") bring this action against Defendants Kreg Therapeutics, Inc. ("Kreg") and Craig Poulos ("Defendants") alleging copyright and trademark infringement and unfair competition under federal and state law. Currently before the Court is Defendants' combined motion [49] to strike portions of Plaintiffs' First Amended Complaint and to dismiss all claims in the First Amended Complaint with prejudice and Defendants' motion [55] to stay discovery. For the reasons stated below, Defendants' motion [49] is granted and part and denied in part. The Court grants Defendants' motion to strike in part: paragraphs 28–47, 50–53, 55, 64, 77–79, 84–87, 89–91, and 108–09, as well as portions of paragraphs 25 and 113 (25(1)–(10) and 113(1)–(10)), are stricken from the First Amended Complaint as they relate solely to the claims this Court has previously dismissed. Furthermore, the Court grants Defendants' motion to dismiss Count II, Count III, Count V, Count VI, and Count VII, and denies Defendants' motion to dismiss Count I and Count IV. Plaintiffs will be given one final attempt to replead Counts II, III, V, VI, and VII on or before January 22, 2018. Defendants' motion [55] to stay discovery pending the resolution of its motion to strike and to dismiss is denied as moot. This case is set for further status on January

30, 2018 at 10:00 a.m. to discuss a discovery plan.[1]  Counsel are directed to confer and submit an updated joint status report no later than January 26, 2018.

## I.  Background

The background of this case, and of the more extensive litigation in which VitalGo and Kreg have been engaged before this Court, is set forth in the Court's previous opinion in this case, knowledge of which is assumed here.  [See 41 at 1–7.]  Briefly summarized, the parties entered into an agreement pursuant to which Kreg was granted the exclusive right to distribute Plaintiffs' Total Lift Bed product in certain regions of the country.  In 2011, VitalGo terminated the parties' agreement, and Kreg thereafter filed suit (the "2011 Lawsuit") against VitalGo for breach of that agreement.  VitalGo counterclaimed that Kreg had violated the parties' agreement by both making unauthorized alterations to the Total Lift Bed without VitalGo's prior written approval and by failing to obtain VitalGo's approval of all advertisements and promotional materials Kreg used to promote and sell Total Lift Beds.[2]

In May 2016, Plaintiffs filed the instant lawsuit, bringing claims against Defendants for copyright infringement in violation of 17 U.S.C. § 501 (Count I); unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); unfair competition and false advertisement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count III); common law trademark infringement (Count IV);

---

[1]  In their motion [55] to stay discovery, Defendants have complained about the scope of the discovery requests that Plaintiffs served on them in May 2017.  In light of the Court's decision, Plaintiffs should retailor their requests to be consistent with the claims that are allowed to go forward.  To the extent that Plaintiffs are successful in the future in meeting the Rule 9(b) particularity standard for the claims that are being dismissed here, Plaintiffs may expand the scope of discovery at the appropriate time.

[2] The 2011 Lawsuit has concluded proceedings before the district court and is currently on appeal.  After a bench trial, the Court concluded that Kreg was entitled to $642,610 in damages plus $364,593 in prejudgment interest, for a total award of $1,007,203.  See *Kreg Therapeutics, Inc. v. Vitalgo, Inc.*, Docket Entry 250, No. 11-cv-6771 (N.D. Ill.) (Memorandum Opinion and Order).

common law unfair competition (Count V); violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 Ill. Comp. Stat. 510/1 *et seq.* (Count VI); and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count VII). [1 ¶ 2.] According to the original complaint, Plaintiffs began using VitalGo and Total Lift Bed marks in the United States in 2008, Plaintiffs began showing the Total Lift Bed in advertising and marketing materials in approximately 2008, and Plaintiffs have filed copyright applications for a brochure and for two digital renderings of the Total Lift Bed. [1 ¶¶ 14, 18.] Plaintiffs alleged that (1) Defendants marketed Plaintiffs' Total Lift Bed as an "Exclusive Kreg Product" or as a "Kreg Bed" and used Plaintiffs' Copyrighted Works in doing so since October 2011; (2) Defendants made modifications to Plaintiffs' Total Lift Beds but continued to advertise them as Total Lift Beds in 2010 or 2011; and (3) Defendants developed the Kreg Catalyst Bed in 2014 to compete with the Total Lift Bed and, until March 2016, they promoted the Catalyst Bed using the Total Lift Bed mark and Plaintiffs' Copyrighted Works. [41 at 7.]

Defendants moved to dismiss [18] Plaintiffs' complaint in July 2016. To support their motion, Defendants argued that (1) Plaintiffs were judicially estopped from asserting their claims; (2) Plaintiffs' claims could not be alleged in an independent lawsuit because they constituted impermissible claim splitting; (3) no factual allegations demonstrated Defendant Poulos's personal liability; (4) the doctrine of laches barred Plaintiffs' Lanham Act claims; (5) Plaintiffs did not allege actual consumer reliance on Defendants' alleged misleading advertisements as necessary to support its Lanham Act claims; and (6) Plaintiffs could not seek attorneys' fees under the Copyright Act. On March 29, 2017, the Court granted in part and denied in part Defendants' motion. [See 41.] The Court held that the doctrine of claim splitting

precluded Plaintiffs from bringing claims against Defendants relating to Defendants' modifications to the Total Lift Bed and to Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed because those claims were based on the same set of operative facts underlying VitalGo's counterclaim in the 2011 Lawsuit. [41 at 9–18.] The Court also held that Plaintiffs could proceed with their claims to the extent these claims are based on Defendants' alleged marketing of their Catalyst Bed using Plaintiffs' intellectual property because the underlying facts on which these allegations are based are separate and distinct from those underlying Plaintiff VitalGo's counterclaims in the 2011 Lawsuit. [41 at 18–19.] The Court also dismissed Plaintiffs' claims for attorneys' fees pursuant to § 505 of the Copyright Act. [41 at 27.]

Plaintiffs then filed their First Amended Complaint on May 3, 2017. [See 43.] Defendants responded on May 31, 2017 by filing the instant motion [49] to strike various allegations from the First Amended Complaint concerning the Total Lift Bed pursuant to Federal Rule of Civil Procedure ("Rule") 12(f) and to dismiss the remaining claims in the First Amended Complaint pursuant to Rule 12(b)(6).

## II.     Defendants' Rule 12(f) Motion to Strike

### A.     Legal Standard

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); see also *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 85 F. Supp. 3d 988, 993 (N.D. Ill. 2015) ("But where a defendant's asserted [affirmative defenses] are both legion and

mostly frivolous, a motion to strike can aid the parties in resolving the case by removing irrelevant issues from consideration.").  When seeking to strike specific allegations, "the movant must show that the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997) (internal quotation marks and citation omitted); see also *Manuel v. Lucenti*, 2004 WL 2608355, at *2 (N.D. Ill. Nov. 16, 2004) ("To prevail on a motion to strike under Rule 12(f), defendants must demonstrate that the material at issue does not bear on the subject matter of the litigation and will prejudice the defendants.").  A district court has "considerable discretion" in striking redundant, immaterial, impertinent, or scandalous matter.  *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

### B.    Analysis

Defendants argue that the vast majority of the factual allegations contained in Plaintiffs' First Amended Complaint must be stricken because they only relate to the previously dismissed claims (regarding Defendants' modifications to the Total Lift Bed and to Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed) and, as such, are irrelevant to the Catalyst Bed-related claims that remain in the case.  Specifically, Defendants request that the Court strike paragraphs 20–23, 25–66, 69–79, 84–87, 89–91, 108–09, and 116–28 in their entirety and portions of paragraphs 25 and 113 from the First Amended Complaint. Defendants argue that it would be highly prejudicial for these factual allegations to remain in the First Amended Complaint—thus "reviving" the previously-dismissed claims—because then Defendants would not reap the benefit of their successful motion to dismiss.

The Court concludes that at least some of the allegations in the First Amended Complaint must be stricken because they have no apparent relevance to the Catalyst Bed-related claims that remain in the litigation. A court may strike particular allegations if "[t]he Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again" in an amended complaint. *Wei Liang v. Frontline Asset Strategies, LLC*, 2017 WL 1365604, at *2 (N.D. Ill. Apr. 14, 2017) (striking several paragraphs from Plaintiff's amended complaint and rejecting the plaintiff's argument that these facts were still relevant to his remaining claims); see also *Simons v. Ditto Trade, Inc.*, 2015 WL 1918617, at *5–6 (N.D. Ill. Apr. 28, 2015) (striking a counterclaim's allegations regarding the plaintiff's relationship to another because "none" of the amended counterclaims were about that relationship); *Hickman v. Wells Fargo Bank NA*, 2010 WL 3833669, at *7 (N.D. Ill. May 11, 2010) (striking disputed language from amended complaint because "the Court has already held that Plaintiff has failed to state a claim * * * in this regard"); *David v. Vill. of Oak Lawn*, 1996 WL 494268, at *2 (N.D. Ill. Aug. 27, 1996) (striking references to a conspiracy in plaintiff's amended complaint because the court had previously dismissed the conspiracy counts). Here, several of the factual allegations in the First Amended Complaint relate solely to the two theories that the Court has previously dismissed because they cannot be brought in a lawsuit separate from the 2011 Lawsuit: (1) that Defendants marketed the Total Lift Bed as an "Exclusive Kreg Product" or as a "Kreg Bed" using Plaintiff's Copyrighted Works, and (2) that Defendants made modifications to Plaintiffs' Total Lift Beds but continued to advertise them as Total Lift Beds. These allegations are without any relevance to the Catalyst Bed claims. [3] Keeping such

---

[3] As an example, paragraph 34 in the First Amended Complaint states, "[d]espite Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants used and continue to use Plaintiffs' TOTAL LIFT BED mark to advertise, market, rent, and/or sell hospital beds that were not, and are not, Plaintiffs' Total Lift Beds." [43 ¶ 34.] This paragraph entirely relates to dismissed claims premised on

allegations in the operative complaint would have the effect of "confusing the issues" and thus causing prejudice to Defendants in that respect. *Cumis Ins. Soc'y*, 983 F. Supp. at 798.

Plaintiffs argue that the allegations Defendants seek to have stricken are necessary to support and provide context to Plaintiffs' claims and clearly bear on the subject matter of the litigation. The Court disagrees that all of the allegations Plaintiffs have included in their First Amended Complaint perform such functions. Allegations in a complaint need not bear directly on the subject matter of a claim, and thus need not be stricken from the complaint, as long as they bear some relationship to the parties' or the Court's understanding of the actual claims in the case. See *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 2005 WL 843297, at *13–14 (N.D. Ill. Jan. 20, 2005) (allegations should not be stricken if they "might serve to achieve a better understanding of the claim or perform some other useful purpose in the just disposition of the litigation") (internal alterations omitted); *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998) (refusing to strike allegations where they were "so general in nature" that they "very well" could relate to the viable claims in a case). But here, many of the disputed paragraphs that Defendants seek to strike from the First Amended Complaint are not general background information regarding the parties' relationship but specific facts that relate to the previously dismissed claims. As such, they are irrelevant to the subject matter of the litigation.

Nevertheless, Defendants' motion has painted with too broad of a brush. Some of the paragraphs that Defendants seek to have stricken provide context regarding the parties'

---

allegations that Defendants made modifications to the Total Lift Beds yet continued to advertise them as Total Lift Beds and is irrelevant to allegations regarding Defendants' Catalyst Bed. See also [43 ¶ 30] ("On or about 2010 and 2011, Defendants began making modifications or alterations to Plaintiffs' Total Lift Beds. In the Prior Litigation, Defendants admitted they made substantial modifications or alterations to Plaintiffs' Total Lift Beds."); [*Id.* ¶ 33] ("As a result of Defendants' substantial modifications or alterations to Plaintiffs' Total Lift Beds, Defendants are offering a product that is materially different from the Total Lift Bed supplied by Plaintiffs.").

relationship, what the Total Lift Bed marks and Plaintiffs' Copyrighted Works are, and the alleged personal liability of Defendant Poulos. See, *e.g.*, [43 ¶ 20] ("In 2011, Defendant Kreg stated that Plaintiffs' 'Total Lift Bed is the only hospital-grade bed that can elevate someone from a lying to a fully standing position, with zero lifting on the part of the caregiver.'"); [*id.* ¶ 66] ("Defendants intentionally used Plaintiffs' TOTAL LIFT BED mark so as to create consumer confusion and traffic off of Plaintiffs' reputation and goodwill under the TOTAL LIFT BED mark."); [*id.* ¶ 87] ("In the Prior Litigation, Defendant Poulos testified during his deposition that he focuses all of his time on behalf of Defendant Kreg to sales and marketing."). Leaving these paragraphs in the First Amended Complaint would not prejudice Defendants and therefore they do not need to be stricken. Other paragraphs that Defendants move to strike arguably relate to Plaintiffs' claims regarding the Catalyst Bed because they refer generally to Defendants' hospital beds. See, *e.g.*, [43 ¶ 56] ("Defendants are not authorized to use Plaintiffs' TOTAL LIFT BED mark in association with hospital beds."); [*id.* ¶ 59] ("Defendants' use of Plaintiffs' TOTAL LIFT BED mark falsely suggests that * * * Defendants' hospital beds originate from Plaintiffs."); [*id.* ¶ 64] ("Defendants' use of Plaintiffs' TOTAL LIFT BED mark is likely to cause, has caused, and is causing actual consumer confusion in the marketplace as to * * * Plaintiffs' affiliation with Defendants and Defendants' hospital beds."). Considering the close relationship between Defendants' Rule 12(f) and Rule 12(b)(6) motions, and considering the need to draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007), the Court will not strike allegations as immaterial that could refer to Plaintiffs' Catalyst Bed claims. These paragraphs may remain in the First Amended Complaint, but only as they relate to the Catalyst Bed.

The Court will therefore grant in part and deny in part Defendants' motion to strike as follows. Paragraphs 28–47, 50–53, 55, 64, 77–79, 84–87, 89–91, and 108–09, as well as the portions of paragraphs 25 and 113 that relate exclusively to the dismissed claims (25(1)–(10) and 113(1)–(10)), are stricken from the First Amended Complaint as they relate solely to the claims this Court has previously dismissed. The Court declines to strike the remaining paragraphs that Defendants have identified on the understanding that these paragraphs are offered as background or support for Plaintiffs' Catalyst Bed theory only.

## III.    Defendants' Rule 12(b)(6) Motion to Dismiss

Defendants next move to dismiss Plaintiffs' remaining Catalyst Bed-related claims in the First Amended Complaint. Specifically, Defendants move to dismiss the Lanham Act unfair competition, common law unfair competition, IUDTPA, and ICFA claims (Counts II–III and V–VII) because they do not meet the heightened pleading requirements of Rule 9(b). Defendants also move to dismiss the copyright infringement and common law trademark infringement claims (Counts I and IV) because they do not meet the more liberal pleading requirements of Rule 8.

### A.    Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id*. at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads and assesses the plausibility of the complaint as a whole. See

*Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor.  *Killingsworth*, 507 F.3d at 618.

### B.     Analysis

Defendants argue that all remaining claims against them must be dismissed because, once the irrelevant allegations against them are removed pursuant to Rule 12(f), the First Amended Complaint is insufficient to support these remaining claims under either the heightened pleading standard of Rule 9(b) (for Counts II–III and V–VII) or the regular pleading standard of Rule 8(a) (for Counts I and IV).  Plaintiffs make several arguments in opposition.  They argue (1) Defendants' second Rule 12(b) motion should be denied outright pursuant to Rule 12(g)'s consolidation bar; (2) Defendants' Rule 12(b)(6) motion should be denied based on the doctrines of law of the case and judicial estoppel; and (3) Defendants' motion should be denied because Plaintiffs sufficiently pled the remaining asserted claims.

### 1.     Rule 12(g)'s Consolidation Bar

Plaintiffs first argue that Rule 12(g) bars Defendants' instant motion because they have previously moved to dismiss the complaint based on Rule 12(b)(6).  [See 18.]  Rule 12(g) states that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Plaintiffs argue that all of Defendants' Rule 12(b)(6) arguments were available when Defendants filed their first Rule 12(b)(6) motion in July 2016 and, therefore, must have been included in that first motion.

Plaintiffs' argument fails for two reasons. First, Defendants' current Rule 12(b)(6) arguments were not "available" to them prior to the Court's ruling on March 29, 2017. Defendants have moved to dismiss the claims contained in the First Amended Complaint "[a]fter removing all of VitalGo's allegations related to the Total Lift Bed Claims." [50 at 7.] Their motion to dismiss is explicitly based on a court order and targeted at an amended complaint that did not exist when they previously moved to dismiss the original complaint and, as such, would not be included in the Rule 12(g) consolidation bar. Second, even if these arguments were available to Defendants earlier, the Seventh Circuit has clearly stated that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); see also *Cheese Depot, Inc. v. Sirob Imports, Inc.*, 2015 WL 7251949, at *3 (N.D. Ill. Nov. 17, 2015) (applying *Ennenga* to hold that defendant was within its right to bring a motion for failure to state a claim in a successive motion to dismiss); *About U.S. Real Estate, Inc. v. Burnley*, 2015 WL 3397025, at *6 (N.D. Ill. May 26, 2015) (same). Therefore, the Court will not deny Defendants' motion on this basis.

## 2. Judicial Estoppel

Plaintiffs next argue that Defendants are precluded by judicial estoppel and the law of the case doctrine from arguing that Rule 9(b) applies to any of their claims, as they contended in their first Rule 12(b)(6) motion that Rule 8 applied to all of Plaintiffs claims. Judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation. *Zedner v. United States*, 547 U.S. 489, 504 (2006). The doctrine "is invoked to protect the integrity of the judicial process by estopping parties from asserting contradictory positions in court to derive an unfair advantage." *Burns v. Vill. of Crestwood*, 2013 WL 352784, at *3 (N.D. Ill. Jan. 29, 2013); see also *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.

1992) (Judicial estoppel is "intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.").  Judicial estoppel is an equitable doctrine that cannot be reduced to a precise formula or test, see *Zedner*, 547 U.S. at 504, and it is a matter of discretion.  *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004).  Three factors that inform the decision about whether to apply judicial estoppel are: (1) whether the later position is clearly inconsistent with the earlier position; (2) whether the party to be estopped succeeded in persuading the first court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (citation and internal quotation marks omitted).  Under the law of the case doctrine, "a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it."  *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004).

The Court concludes that neither judicial estoppel nor the law of the case doctrine bars Defendants' arguments regarding the applicability of Rule 9(b).  In their first Rule 12(b)(6) motion, Defendants did not even mention the applicability of either standard, much less construct an argument based on them.  [See 17, 35, 41.]  The majority of arguments that Defendants made focused on legal defenses rather than whether Plaintiffs had sufficiently stated a claim.  Defendants' principal argument directed towards the content of the original complaint was that Plaintiffs did not allege actual consumer reliance to support their Lanham Act claims.  [See 41 at 26.]  This argument did not rely on the sufficiency of the allegations under either pleading

standard, however, and the Court did not reference Rule 8 in its decision on this argument.[4]  [*Id.*]

Moreover, the Court's discussion of Rule 8(a) in the context of the legal standard on a motion to dismiss does not represent a decision that Rule 9(b) does not apply to these claims.  See *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 844 (N.D. Ill. 2013) (noting that Rule 9 must be read "in conjunction" with Rule 8).  Because the Court has not previously decided whether Rule 9(b)'s heightened pleading standard applies to the unfair competition claims in Plaintiffs' complaint, this argument is not barred by judicial estoppel or the law of the case.  *Cf. Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542, 545 (N.D. Ill. 2004) (judicial estoppel barred reconsideration of prior ruling by the district court specifically holding that the complaint had satisfied the heightened pleading requirements of Rule 9(b)).

### 3.  12(b)(6) Arguments

Defendants argue that all of the claims in Plaintiffs' amended complaint must be dismissed for failure to state a claim.  Defendants first argue that the unfair competition-related claims must be dismissed for failure to satisfy Rule 9(b)'s particularity requirement.  Defendants also argue that Plaintiffs' copyright infringement and trademark infringement claims must be dismissed for failure to satisfy Rule 8(a)'s pleading requirement.

### a.  Counts II–III and V–VII

Defendants contend that the First Amended Complaint's Lanham Act claims, along with the IUDTPA, ICFA, and common law unfair competition claims, all sound in fraud and therefore must comply with the heightened pleading requirements of Rule 9(b); according to Defendants, Plaintiffs' First Amended Complaint does not comply with this standard.  Plaintiffs argue that

---

[4] The Court did reference the difference between Rule 8 and Rule 9 in its decision on the sufficiency of the allegations regarding Defendant Poulos's personal liability, [see 41 at 24], but this was not in response to any particular argument made by Defendants.

the Rule 9(b) heightened pleading standard does not apply to these claims but, even if it does, their claims sufficiently comply with the rule's requirements.

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings*, *LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b) specifically requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at *5 (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

Plaintiffs bring two unfair competition claims under Section 43(a) of the Lanham Act: a claim for false designation of origin and a claim for false advertising.[5] District courts in the Seventh Circuit have not been uniform in requiring that such claims meet the heightened pleading standards of Rule 9(b). Several courts have applied Rule 9(b)'s heightened pleading

---

[5] Because the state law claims rely on the same factual allegations as these Lanham Act claims, they are analyzed according to the same principles as the Lanham Act claims. See *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.") (citation omitted); see also *Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 880 (N.D. Ill. 2004) (noting that courts resolve state law unfair competition and deceptive practices claims according to the same principles as set forth in the Lanham Act); *MJ & Partners Res. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) ("[T]he legal inquiry is the same under the Lanham Act as under the Consumer Fraud Act and the Deceptive Trade Practices Act."). Therefore, for purposes of determining whether Rule 9(b)'s pleading standard applies, the IUDTPA and ICFA claims "must rise or fall based on the outcome of the Lanham Act claim[s]." *BlueStar Mgmt. v. The Annex Club, LLC*, 2010 WL 2802213, at *8 (N.D. Ill. July 12, 2010); see also *Morningware*, 673 F. Supp. 2d at 639 (common law unfair competition claim does not need to be addressed separately because it is codified by the IUDTPA).

standard to Lanham Act (and related state law) claims when these claims sound in fraud. See, *e.g.*, *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2017 WL 1436965, at *3 (N.D. Ill. Apr. 24, 2017) ("Lanham Act claims alleging false representation must meet Rule 9(b)'s heightened pleading requirements."); *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, 2015 WL 13590400, at *1 (C.D. Ill. Feb. 2, 2015) (assuming for purposes of motion to dismiss that Rule 9(b) applies to Lanham Act false advertising claims); *Ferris Mfg. Corp. v. Carr*, 2015 WL 279355, at *6 (N.D. Ill. Jan. 21, 2015) (applying Rule 9(b) standard to Lanham Act claim for false designation of origin); *Toddy Gear, Inc. v. Navarre Corp.*, 2014 WL 4271631, at *3 (N.D. Ill. Aug. 26, 2014) (applying Rule 9(b) to Lanham Act false advertising and IUDTPA claims); *Vertical Web Media, L.L.C. v. Etailinsights, Inc.*, 2014 WL 2868789, at *3 (N.D. Ill. June 24, 2014) (concluding that Rule 9(b) generally applies to claims alleging false advertising under the Lanham Act); *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 738 (N.D. Ill. 2011) (differentiating between false advertising claims under Section 1125(a)(1)(B), which may be subject to Rule 9(b) because the involve false statements and deception, and likelihood of confusion claims under Section 1125(a)(1)(A), which are not subject to Rule 9(b) because there is no requirement to allege fraud); *Control Sols., LLC v. Oshkosh Corp.*, 2011 WL 1131329, at *2–3 (N.D. Ill. Mar. 28, 2011) (applying Rule 9(b) standard to Lanham Act and related state law claims because they "involve allegations sounding in fraud"); *CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) ("Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of [Rule] 9(b).") (citing *Conditioned Ocular Enhancement v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006)); *Fisher & Paykel Appliances, Ltd. v. LG*

*Elecs., Inc.*, 2003 WL 21910622, at *1 (N.D. Ill. Aug. 7, 2003) (heightened pleading requirements apply to claim for false advertising under the Lanham Act).

Other district courts have either explicitly questioned whether Rule 9(b) applies to Lanham Act claims or have applied Rule 8(a) without considering the issue. See *Par Sterile Prod., LLC v. Fresenius Kabi USA LLC*, 2015 WL 1263041, at *3 (N.D. Ill. Mar. 17, 2015) (applying Rule 8(a) pleading standard to a Lanham Act false advertising claim); see also *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017) (stating that because the complaint was seriously deficient, the court would not get into "the complex question of whether [Rule] 9(b)'s standard for pleading fraud" applied to Lanham Act claims, although the court was "not so sure" that Rule 9(b) did apply). *Cf. Publications Int'l, Ltd. v. Leapfrog Enters., Inc.*, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002) (noting that not all claims brought under the ICFA would constitute fraud and thus not all such claims would need to meet heightened pleading requirements).

The Seventh Circuit has also indicated, albeit in dicta, that Rule 9(b) may be applied to Lanham Act claims that sound in fraud. See *Gensler v. Strabala*, 764 F.3d 735, 736 (7th Cir. 2014) (noting that the plaintiff, in bringing claim based on Section 43(a)(1)(A) of the Lanham Act, had "charge[d] [Defendant] with a form of fraud, so we would expect its complaint to allege with particularity the nature of the grievance—what [Defendant] said and why it is false") (citing Fed. R. Civ. P. 9(b)). Even if *Gensler* is not controlling, the Court finds its analysis persuasive and thus will apply Rule 9(b)'s heightened pleading standard to Plaintiffs' Lanham Act claims, which do sound in fraud. A claim "sounds in fraud" if it "is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiffs' First Amended Complaint clearly alleges fraudulent conduct: In addition to claiming

that there is a likelihood of confusion based on Defendants' conduct, Plaintiffs claim that Defendants' conduct was intentional and deceptive to consumers. See, *e.g.*, [43 ¶ 1] (Plaintiffs are seeking relief "for Defendants' false and misleading solicitation of consumers and promotion of Defendants and Defendants' products in a manner calculated to deceived the consuming public"); [*id.* ¶ 140] ("Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions"); [*id.* ¶ 161] ("Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public and to capitalize on the goodwill developed by Plaintiffs."); [*id.* ¶ 177] ("The acts of Defendants complained of herein in Counts I–VI constitute fraud and deceptive business practices in violation of [the ICFA]."). And these allegations are similar to those in other cases in which courts have found that the allegations in the complaint sound in fraud, and so need to meet Rule 9(b). See, *e.g.*, *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 866 (N.D. Ill. 2015) (stating that allegations that defendants misrepresented the origin of their honey to potential buyers sounded in fraud and thus needed to comply with Rule 9(b)); *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 793 (N.D. Ill. 2015) (applying Rule 9(b) to Lanham Act claims where the claims "allege that defendants engaged in fraudulent conduct," including by making false statements and by attempting to pass themselves off as plaintiff); *CardioNet*, 2008 WL 567031, at *2 (allegations sound in fraud where counterclaimant alleged that counterclaim-defendant "knowingly and deliberately made misrepresentations in its marketing strategy."); *MPC Containment Sys., Ltd. v. Moreland*, 2006 WL 2331148, at *2–3 (N.D. Ill. Aug. 10, 2006) (applying Rule 9(b)'s standard to claims that the defendants had, through misrepresentation, created a likelihood of confusion as to the plaintiff's "association with defendants and/or endorsement of defendants' product").[6]

---

[6] Plaintiffs rely heavily on *Priority Int'l Animal Concepts, Inc. v. Bryk*, 2012 WL 6020044 (E.D. Wis.

Plaintiffs argue that Rule 9(b) cannot apply to its false designation of origin claim (Count II) because Rule 9(b) does not apply to likelihood of confusion theories. [58 at 7] (citing *Dynamic Fluid Control*, 79 F. Supp. 2d at 738). However, "[t]he law in this Circuit is well-settled that the applicability of Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint." *Sequel Capital, LLC v. Pearson*, 2010 WL 4008161, at *7 (N.D. Ill. Oct. 13, 2010) (citing *Borsellino*, 477 F.3d at 507); see also *Gensler*, 764 F.3d at 736 (contemplating that Rule 9(b) applies to a false designation of origin claim under Section 43(a)(1)(A) where the allegations charge a fraudulent course of conduct). Therefore, both Lanham Act claims, as well as the related stated law claims, are subject to the heightened pleading standard of Rule 9(b) because they are all premised on the same course of fraudulent conduct. *BlueStar*, 2010 WL 2802213, at *8.

Turning to whether the remaining allegations in the First Amended Complaint meet Rule 9(b)'s heightened pleading requirements, the Court concludes that they do not. In the First Amended Complaint, Plaintiffs have alleged that (1) the identities of those making the misrepresentation are Defendants Kreg and Poulos, [43 ¶¶ 110–11]; (2) the time of the misrepresentation is sometime between 2014 and 2016, [*id.* ¶¶ 67, 80]; (3) the place of the misrepresentation is the Northern District of Illinois, [*id.* ¶ 11]; (4) the content of the misrepresentation is that Defendants have "falsely suggest[ed] that * * * Defendants' Catalyst bed is a Total Lift Bed made by Plantiffs," [*id.* ¶¶ 25, 113]; and (5) the method by which the misrepresentation was communicated was through Defendants website and marketing materials, [*id.* ¶¶ 67, 80, 141, 148].

Dec. 3, 2012) for the proposition that Lanham Act claims do not sound in fraud where allegations of fraudulent conduct are "not essential" to those claims. *Id.* at *3. This decision has been called "difficult to reconcile" with binding Seventh Circuit precedent (see *Vertical Web Media*, 2014 WL 2868789, at *3), and thus the Court declines to follow it.

What Plaintiffs have provided is the headline of the newspaper story, but not its "first paragraph." *DiLeo*, 901 F.2d at 627. Plaintiffs have not pleaded these claims with the particularity that Rule 9(b) requires: they have not pointed to any specific marketing device (such as the exact brochure or website) in which Defendants have made particular misrepresentations about the Catalyst Bed in the two-and-a-half-year window between 2014 and 2016. Such "nebulous allegations fall short of Rule 9(b)'s requirements." *CardioNet*, 2008 WL 567031, at *3.

To be sure, some district courts have been more lenient in assessing claims under Rule 9(b)'s heightened standard, particularly where there is an information asymmetry between the parties preventing the plaintiff from having access to the particulars of the alleged misrepresentations. See, *e.g.*, *Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 WL 1843370, at *2 (N.D. Ill. June 28, 2006) (finding that Rule 9(b) was satisfied where plaintiffs had pled that the alleged misrepresentations were happening "on an ongoing basis" in "the Northern District of Illinois" through "the internet, in print, press releases, point-of-purchase and television advertising"); see also *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim."). But this is not such a case. These parties have been litigating each other over these beds since 2011, and, given their litigation history, Plaintiffs have had a better opportunity than the average litigant to nail down the particulars of the fraud that they are alleging. As such, the Court will not relax the particularity requirement of Rule 9(b) based on Plaintiffs' assertion that they "lack access to the full spectrum" of Defendants' materials at this stage of the case. [58 at 12.]

Therefore, Defendants' motion to dismiss is granted as to Count II, Count III, Count V, Count VI, and Count VII. However, because the Court has clarified for the first time in this case the applicability of Rule 9(b) to these claims, the Court will allow Plaintiffs one more opportunity to amend to try to meet that standard. Any further amended pleading must be filed no later than January 22, 2018.

### b.      Counts I and IV

Defendants argue that, even under the more liberal pleading standard of Rule 8(a), Plaintiffs have failed to state a claim for either copyright infringement (Count I) or trademark infringement (Count IV).

The Court agrees with Plaintiffs that these two claims are sufficiently pled to withstand a motion to dismiss. Regarding the copyright infringement claim, the United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner * * * is an infringer of the copyright." 17 U.S.C. § 501(a). The Copyright Act grants a copyright owner the exclusive rights to reproduce, prepare derivative works, distribute copies of, and display a copyrighted design to the public. 17 U.S.C. § 106. "To state a claim for direct copyright infringement, a plaintiff must allege facts setting forth (1) ownership of a valid copyright in a work and (2) the copying of elements of the work that are original." *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.* 499 U.S. 340, 361 (1991)).

Plaintiffs' First Amended Complaint contains adequate factual allegations to satisfy Rule 8(a)'s pleading standard. Plaintiffs allege that they have filed copyright applications for a brochure and two digital renderings or pictures of its Total Lift Bed. [43 ¶¶ 18, 131.] Plaintiffs further allege that Defendants "used and continued to use Plaintiffs' Copyrighted Works * * * to

introduce and to promote sales of Defendants' Catalyst bed." [*Id.* ¶ 67.] See also [*id.* ¶ 80] ("On or about 2014, Defendants introduced their Catalyst bed to compete with Plaintiffs' Total Lift Bed but Defendants failed to show their Catalyst bed in marketing materials. Until on or about March 2016, Defendants intentionally used only Plaintiff's Copyrighted Works to introduce and promote sales of Defendants' Catalyst bed."); [*id.* ¶ 25] ("Defendants have used and/or continue to use Plaintiffs' TOTAL LIFT BED mark both with and without Plaintiffs' Copyrighted Works to deceive consumers and to falsely suggest that * * * Defendants' Catalyst bed is a Total Lift Bed made by Plaintiffs."). Plaintiffs also point to specific infringing uses of Plaintiffs' Copyrighted Works on Defendants' website. See [43 ¶ 71] ("As of at least December 30, 2015, Defendants reproduced, distributed, displayed, and used Plaintiffs' Total Lift Bed Brochure and Total Lift Bed 2 works on its website at www.kreg.us/NewInnovations.html."). As discussed above, see Section II.B, these allegations remain in the First Amended Complaint only to the extent that they relate to the Catalyst Bed, and therefore provide factual support for Plaintiffs' claims in that respect. These allegations therefore provide Defendants with "fair notice" of the copyright infringement claim as well as "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Frerck v. Pearson Educ., Inc.*, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) (rejecting argument that plaintiff is required to plead specific details as to infringing acts because "[t]his requirement would impose a higher burden on copyright claims than is required under the federal rules").

The Court similarly concludes that Plaintiffs have stated a claim for trademark infringement. To state a claim for trademark infringement, "a plaintiff must allege that: (1) it has a protectable right in the asserted trademarks; and (2) the defendant's use of the mark is likely to cause confusion." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill.

2014). Here, Plaintiff has alleged that (1) it has protectable common law rights in its Total Lift Bed mark, [43 ¶ 154], and (2) Defendants are using this mark in a way that falsely suggests that Defendants are affiliated with Plaintiffs' hospital bed, which is likely to cause confusion for consumers "as to the origin of Defendants' hospital beds," [*id.* ¶¶ 57–62.] Plaintiffs specifically allege that Defendants used Plaintiffs' mark "to introduce and to promote sales of Defendants' Catalyst bed" and that Defendants did so "to create consumer confusion and traffic off of Plaintiffs' reputation and goodwill." [*Id.* ¶ 67.] These allegations are enough to satisfy Rule 8(a)'s pleading requirements. See *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 1996 WL 568794, at *2 (N.D. Ill. Sept. 30, 1996) ("At the pleading stage, plaintiff need only allege, not prove" the elements of a trademark infringement claim).

Therefore, Defendants' motion to dismiss is denied as to Count I and Count IV.

## IV. Conclusion

For the foregoing reasons, Defendants' motion [49] is granted and part and denied in part. The Court grants Defendants' motion to strike in part: paragraphs 28–47, 50–53, 55, 64, 77–79, 84–87, 89–91, and 108–09, as well as portions of paragraphs 25 and 113 (25(1)–(10) and 113(1)–(10)), are stricken from the First Amended Complaint as they relate solely to the claims this Court has previously dismissed. Furthermore, the Court grants Defendants' motion to dismiss Count II, Count III, Count V, Count VI, and Count VII, and denies Defendants' motion to dismiss Count I and Count IV. Plaintiffs will be given one final attempt to replead Counts II, III, V, VI, and VII on or before January 22, 2018. Defendants' motion [55] to stay discovery pending the resolution of its motion to strike and to dismiss is denied as moot. This case is set for further status on January 30, 2018 at 10:00 a.m. to discuss a discovery plan. Counsel are directed to confer and submit an updated joint status report no later than January 26, 2018.

Date: December 21, 2017

Robert M. Dow, Jr.
United States District Judge