**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VITALGO, INC. and VITALGO SYSTEMS LTD., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-cv-5577 |
| v. | ) ) ) | Judge Robert M. Dow, Jr. |
| KREG THERAPEUTICS, INC. and CRAIG POULOS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs VitalGo, Inc. ("VitalGo") and VitalGo Systems Ltd. (collectively, "Plaintiffs") bring this action against Defendants Kreg Therapeutics, Inc. ("Kreg") and Craig Poulos (collectively, "Defendants") alleging copyright and trademark infringement and unfair competition under federal and state law. Currently before the Court is Defendants' combined motion [77] to strike portions of Plaintiffs' Second Amended Complaint and to dismiss all claims in the Second Amended Complaint with prejudice. For the reasons stated below, Defendants' motion [77] is granted in part and denied in part. The Court grants Defendants' motion to strike in part as follows: portions of paragraphs 29, 51, 60, 122, 131, 159, 167, and 180 (29(1), 51(i), 60 (last sentence), 122 (last clause), 131(i), 159(i), 167(i), 180(i)) are stricken from the Second Amended Complaint as they address claims that this Court has previously dismissed. Furthermore, the Court grants Defendants' motion to dismiss Count III, and denies Defendants' motion as to Count I, Count II, Count IV, Count V, Count VI, and Count VII. This case is set for further status hearing on April 10, 2019 at 9:30 a.m.

## I. Background[1]

The background of this case, and of the more extensive litigation in which VitalGo and Kreg have been engaged before this Court, is set forth in the Court's previous opinions in this case, knowledge of which is assumed here. [See 41, at 1–7; 67, at 1–4.] Briefly summarized, the parties entered into an agreement pursuant to which Kreg was granted the exclusive right to distribute Plaintiffs' Total Lift Bed product in certain regions of the country. In 2011, VitalGo terminated the parties' agreement, and Kreg thereafter filed suit (the "2011 Lawsuit") against VitalGo for breach of that agreement. VitalGo counterclaimed that Kreg had violated the parties' agreement by both making unauthorized alterations to the Total Lift Bed without VitalGo's prior written approval and by failing to obtain VitalGo's approval of all advertisements and promotional materials Kreg used to promote and sell Total Lift Beds. The 2011 Lawsuit ended after a bench trial in which the Court concluded that Kreg was entitled to $642,610 in damages plus $364,593 in prejudgment interest, for a total award of $1,007,203. See *Kreg Therapeutics, Inc. v. Vitalgo, Inc.,* Dkt. Entry 250, No. 11-cv-6771 (N.D. Ill.). The Seventh Circuit recently affirmed that judgment. See *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, --- F.3d ---, 2019 WL 1198376 (7th Cir. Mar. 14, 2019).

In May 2016, Plaintiffs filed the instant lawsuit, bringing claims against Defendants for copyright infringement in violation of 17 U.S.C. § 501 (Count I); unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); unfair competition and false advertisement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count III); common law trademark infringement (Count IV);

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

common law unfair competition (Count V); violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 Ill. Comp. Stat. 510/1 *et seq.* (Count VI); and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count VII). [1, ¶ 2.] According to the original complaint, Plaintiffs began using the VitalGo and TOTAL LIFT BED marks in the United States in 2008; Plaintiffs began showing the Total Lift Bed in advertising and marketing materials in approximately 2008; and Plaintiffs have filed copyright applications for a brochure and for two digital renderings of the Total Lift Bed. [1, ¶¶ 14, 18.] Plaintiffs alleged that (1) Defendants marketed Plaintiffs' Total Lift Bed as an "Exclusive Kreg Product" or as a "Kreg Bed" and used Plaintiffs' Copyrighted Works in doing so since October 2011; (2) Defendants made modifications to Plaintiffs' Total Lift Beds but continued to advertise them as Total Lift Beds in 2010 or 2011; and (3) Defendants developed the Kreg Catalyst Bed in 2014 to compete with the Total Lift Bed and, until March 2016, they promoted the Catalyst Bed using the Total Lift Bed mark and Plaintiffs' Copyrighted Works. [41, at 7.]

Defendants moved to dismiss [18] Plaintiffs' complaint in July 2016. In support of their motion, Defendants argued that (1) Plaintiffs were judicially estopped from asserting their claims; (2) Plaintiffs' claims could not be alleged in an independent lawsuit because they constituted impermissible claim splitting; (3) no factual allegations demonstrated Defendant Poulos's personal liability; (4) the doctrine of laches barred Plaintiffs' Lanham Act claims; (5) Plaintiffs did not allege actual consumer reliance on Defendants' alleged misleading advertisements as necessary to support its Lanham Act claims; and (6) Plaintiffs could not seek attorneys' fees under the Copyright Act. On March 29, 2017, the Court granted in part and denied in part Defendants' motion. [See 41.] The Court held that the doctrine of claim splitting precluded Plaintiffs from bringing claims against Defendants relating to Defendants' modifications to the Total Lift Bed and

to Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed because those claims were based on the same set of operative facts underlying VitalGo's counterclaim in the 2011 Lawsuit. [41, at 9–18.] However, the Court determined that Plaintiffs could proceed with their claims to the extent the claims were based on Defendants' alleged marketing of their Catalyst Bed using Plaintiffs' intellectual property because the underlying facts on which the allegations were based were separate and distinct from those underlying Plaintiff VitalGo's counterclaims in the 2011 Lawsuit. [41, at 18–19.] The Court also dismissed Plaintiffs' claims for attorneys' fees pursuant to § 505 of the Copyright Act. [41, at 27.]

Plaintiffs then filed their First Amended Complaint on May 3, 2017. [See 43.] Defendants responded on May 31, 2017 by filing a motion [49] to strike various allegations from the First Amended Complaint concerning the Total Lift Bed pursuant to Federal Rule of Civil Procedure ("Rule") 12(f) and to dismiss the remaining claims in the First Amended Complaint pursuant to Rule 12(b)(6). To support their motion, Defendants asserted (1) that the majority of the factual allegations contained in Plaintiffs' First Amended Complaint had to be stricken because they only related to the previously dismissed claims, and (2) that once the irrelevant allegations against them were removed pursuant to Rule 12(f), the First Amended Complaint would be insufficient to support the remaining claims under either the heightened pleading standard of Rule 9(b) (for Counts II–III and V–VII) or the regular pleading standard of Rule 8(a) (for Counts I and IV). [See 49, 50.] The Court granted Defendants' motion to strike in part, striking significant portions of the Plaintiffs' First Amended Complaint. [See 67.] The Court similarly granted Defendants' motion to dismiss with regard to Count II, Count III, Count V, Count VI, and Count VII, and denied the motion with regard to Count I and Count IV. [See *id*.] The Court then gave Plaintiffs one final opportunity to adequately plead the dismissed counts. [*Id.* at 22.]

Plaintiffs subsequently filed their Second Amended Complaint [71] on January 22, 2018. In their Second Amended Complaint, Plaintiffs allege that the Defendants' previously challenged advertisements regarding the Total Lift Bed were part of a conspiracy that ultimately concluded in the Defendants' use of Plaintiffs' intellectual property to sell their own competing lift bed. [See generally 71.] Defendants responded to the Second Amended Complaint on March 20, 2018 by filling another motion [77] to again strike various allegations from the Second Amended Complaint concerning the parties' pre-2014 relationship pursuant to Rule 12(f) and to dismiss the remaining claims in the Second Amended Complaint pursuant to Rule 12(b)(6). Plaintiffs filed a response [79], and Defendants have filed their reply [84].

## II.     Defendants' Rule 12(f) Motion to Strike

### A.  Legal Standard

Under Rule 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); see also *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 85 F. Supp. 3d 988, 993 (N.D. Ill. 2015) ("But where a defendant's asserted [affirmative defenses] are both legion and mostly frivolous, a motion to strike can aid the parties in resolving the case by removing irrelevant issues from consideration."). When requesting a court to strike specific allegations, "the movant must show that the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997) (internal quotation marks and citation omitted); see also *Manuel v. Lucenti*, 2004 WL 2608355, at *2 (N.D. Ill. Nov. 16, 2004)

("To prevail on a motion to strike under Rule 12(f), defendants must demonstrate that the material at issue does not bear on the subject matter of the litigation and will prejudice the defendants."). A district court has "considerable discretion" in striking redundant, immaterial, impertinent, or scandalous matter. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

### B. Analysis

Defendants argue that numerous factual allegations contained in Plaintiffs' Second Amended Complaint must be stricken once again because they reassert the same claims that this Court has previously dismissed or relate to a patent infringement claim that Plaintiffs have not brought. Defendants point to allegations relating to Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed, which they contend are irrelevant to the Catalyst Bed-related claims that remain in the case. Specifically, Defendants request that the Court strike paragraphs 23–27, 52, 54–55, 94, 99–103, and 124 in their entirety and portions of paragraphs 29, 32–33, 50–51, 59–63, 70, 76–77, 122, 131, 159, 167, and 180 from the Second Amended Complaint. [78, ex. D.]

The Court concludes that at least some of the allegations in the Second Amended Complaint should be stricken because they have no relevance to the Catalyst Bed-related claims that remain in the litigation. A court may strike particular allegations if "[t]he Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again" in an amended complaint. *Wei Liang v. Frontline Asset Strategies, LLC*, 2017 WL 1365604, at *2 (N.D. Ill. Apr. 14, 2017) (striking several paragraphs from plaintiff's amended complaint and rejecting the plaintiff's argument that these facts were still relevant to his remaining claims); see also *Simons v. Ditto Trade, Inc.*, 2015 WL 1918617, at *5–6 (N.D. Ill. Apr.

28, 2015) (striking a counterclaim's allegations regarding the plaintiff's relationship to another because "none" of the amended counterclaim's were about that relationship); *Hickman v. Wells Fargo Bank NA*, 2010 WL 3833669, at *7 (N.D. Ill. May 11, 2010) (striking disputed language from amended complaint because "the Court has already held that Plaintiff has failed to state a claim * * * in this regard"); *David v. Vill. of Oak Lawn*, 1996 WL 494268, at *2 (N.D. Ill. Aug. 27, 1996) (striking references to a conspiracy in plaintiff's amended complaint because the court had previously dismissed the conspiracy counts). Here, it appears Plaintiffs once again seek to state a claim for conduct that the Court has already explained cannot be pursued outside the 2011 Lawsuit: the Defendants' marketing of the Total Lift Bed as an "Exclusive Kreg Product" or as a "Kreg Bed" using Plaintiffs' copyrighted works. [See 41, 9–18.] Plaintiffs may not pursue a claim in this litigation for Defendants' advertisements which presented the Total Lift Bed as "their bed." Keeping allegations in the operative complaint that suggest otherwise would have the effect of "confusing the issues," potentially prejudicing Defendants, and unnecessarily complicating the case. *Cumis Ins. Soc'y*, 983 F. Supp. at 798.

Plaintiffs respond that they "have expressly limited their claims to the Catalyst Bed, which eliminates the possibility that Plaintiffs can impermissibly enlarge the scope of this action." [79, at 15.] They also assert that the Defendants' patent activities "furthered [the Defendants'] fraudulent scheme to unfairly compete with Plaintiffs and benefit from their intellectual property to sell the Catalyst Bed." [*Id.*] The Court agrees that to the extent Plaintiffs' allegations relate primarily to Defendants' Catalyst Bed—including the patent allegations—they may remain in the complaint. However, multiple allegations go beyond that limit and confuse the issues. [See, e.g., 71, ¶ 29 ("Defendants have used and/or continue to use Plaintiffs' TOTAL LIFT BED mark both with and without Plaintiffs' Copyrighted Works to deceive consumers and to falsely suggest that:

(1) new versions of Plaintiffs' Total Lift Bed that Defendants never received from Plaintiffs are available to rent from Defendants"); ¶ 122 ("falsely suggest that Plaintiffs' Total Lift Beds originated with Defendant Kreg"); ¶ 131 ("new versions of Plaintiffs' Total Lift Bed that Defendants never received are available to rent from Defendants"); ¶ 159 ("Plaintiffs' hospital beds come from Defendants").]

The Court will therefore grant in part and deny in part Defendants' motion to strike as follows. The portions of Paragraphs 29, 51, 60, 122, 131, 159, 167, and 180 that allege Defendants have advertised and/or continue to advertise Total Lift Beds that they never received or that the "Total Lift Bed" is Defendants' mark (29(1), 51(i), 60 (last sentence), 122 (last clause), 131(i), 159(i), 167(i), 180(i)), are stricken from the Second Amended Complaint as they relate to the same course of conduct—the advertisement of the Total Lift Bed—that that this Court has already explained cannot be used to state a claim in this litigation.

## III.  Defendants' Rule 12(b)(6) Motion to Dismiss

### A.  Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in plaintiff's favor." *Id*. at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads and assesses the plausibility of the complaint as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual

allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth*, 507 F.3d at 618.

### B. Analysis

Defendants seek to dismiss the entire Second Amended Complaint under the doctrines of (1) *res judicata*, (2) laches, and (3) judicial estoppel. In the alternative, Defendants assert that Plaintiffs still have not met their heightened pleading requirements under Rule 9(b) as to their Lanham Act unfair competition, common law unfair competition, IUDTPA, and ICFA claims (Counts II–III and Counts V–VII). Plaintiffs respond that Defendants' motion should be denied because (1) none of the stated doctrines apply to bar the claims in the Second Amended Complaint and (2) Plaintiffs have now sufficiently pled their claims with respect to Counts II–III and Counts V–VII.

### 1. *Res Judicata*

Defendants assert that the Second Amended Complaint is barred by *res judicata* because Plaintiffs' claims arise from and build upon the same set of operative facts underlying Plaintiffs' counterclaims in the 2011 Lawsuit: Defendants' marketing of the Total Lift Bed. [78, at 6-7; 41, at 8–19.] Plaintiffs' respond that their allegations in the Second Amended Complaint regarding the Total Lift Bed only relate to Defendants' release of a competing bed in 2014 [79, at 5–8], which was part of a scheme that allegedly began in 2010. [71, ¶ 49]. Plaintiffs also assert that the law of the case doctrine bars Defendants from repackaging their previous claim splitting argument in the guise of *res judicata.* [79, at 7 n.4.]

Res judicata "precludes parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine will block a second lawsuit if there are (1) identity of the parties in the two suits, (2) a final judgment

on the merits in the first, and (3) an identity of the causes of action. *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (citing *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir.2011)). With regard to the third element, "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir.1993).

The Court has already determined that there is privity in this case for *res judicata* purposes [41, at 14–15], and the previous lawsuit between the two parties has been reduced to a final judgment, [see 2011 Lawsuit, Dkt. Entry 250]. Thus, the only question for the Court is whether the Plaintiffs' claims are based on the same, or nearly the same factual allegations.

In ruling on the Defendants' first motion to dismiss [17], the Court concluded that "[t]he doctrine of claim splitting [—a form of *res judicata*—] precludes Plaintiffs from bringing claims based on Defendants' modifications to the Total Lift Beds and Defendants' allegedly infringing marketing and promotional materials for the Total Lift Bed." [61, at 17.] Defendants assert that the claims set out in the Second Amended Complaint arise out of the same "core of operative facts" as those previous claims: "Kreg's advertisement and marketing of the Total Lift Beds." [78, at 7.] According to Defendants, "Kreg is alleged to have spent years laying the groundwork to later create a false perception that the Catalyst Bed and the Total Lift Bed are the same and/or affiliated." [*Id.*] These allegations, Defendants argue, show Plaintiffs' current claims "arise from 'the same main events' at issue in the 2011 Lawsuit." [*Id.*]

Plaintiffs' respond that they could not have brought their claims relating to the Catalyst Bed in the previous litigation because Defendants did not begin marketing the bed until 2014. [79, at 6.] Because the current claims could not have accrued until 2014 when the Defendants released their bed, Plaintiff's explain, their current claims cannot be barred by *res judicata*. [*Id.*]

As the Court explained in its first memorandum opinion and order, Plaintiffs' claims for intellectual property violations related to the Catalyst Bed are not barred by *res judicata*. [41, at 18–19.] However, Plaintiffs cannot recover for conduct that "is merely a continuation of conduct that Plaintiffs were aware of prior to bringing their counterclaims in the 2011 Lawsuit on October 17, 2011." [41, at 12–13.] Consequently, the Court has already stricken several paragraphs and parts of others in the Second Amended Complaint that relate to those claims. [See *supra* Section II(B).] The remaining allegations, however, demonstrate that the intellectual property claims related to Defendants' marketing of their Catalyst Bed are based on underlying facts separate and distinct from those underlying Plaintiffs' previous counterclaims. [See, e.g., 71, ¶ 50 ("when Defendants Kreg and Poulos eventually released their Catalyst bed in 2014, Defendants continued to advertise only Plaintiffs' Total Lift Bed and to use only Plaintiffs' TOTAL LIFT BED mark on their website and in their promotional materials; (iv) when Defendants Kreg and Poulos eventually released their Catalyst bed in 2014, Defendants Kreg and Poulos showed only their Catalyst bed at tradeshows and conferences even though Defendants only showed Plaintiffs' Total Lift Bed and only used Plaintiffs' TOTAL LIFT BED mark on their website and in marketing materials"), ¶ 64 ("From on or about 2014 until on or about May 25, 2016 * * * Defendants intentionally used only Plaintiffs' TOTAL LIFT BED mark to introduce and to promote sales of Defendants' Catalyst bed.")]

While the Second Amended Complaint does contain multiple allegations that are barred by the Court's prior opinions, see Section II(B) *supra*, that is grounds for striking those allegations, not dismissing the entire claim or lawsuit. The Court is not convinced that that the Catalyst Bed claims arise from the same course of events giving rise to the claims previously dismissed. Plaintiffs have asserted that the conduct at issue in their previous claims was part of a "master

plan" by Defendants to use the goodwill associated with Plaintiffs' marks to sell their Catalyst Bed. Nonetheless, as the Court has explained, what is at issue in the instant suit is the fact that Defendants allegedly continued to advertise the Total Lift Bed while selling Defendants' Catalyst Bed alone. Plaintiffs may only challenge the Defendants continued advertisement of the Total Lift Bed to the extent they can show that the advertisements were used to sell Catalyst Beds. Based on that understanding, the doctrine of *res judicata* does not apply.[2]

## 2. Laches

Defendants next assert that because Plaintiffs knew everything necessary to bring their intellectual property claims in 2012, the doctrine of laches prohibits Plaintiffs from bringing their current claims. [78, at 7–10.] Plaintiffs respond that their claims did not accrue until 2014, making their 2016 lawsuit presumptively timely. [79, 8–11.]

For laches to apply, Defendants must demonstrate both (1) an unreasonable lack of diligence by Plaintiffs, and (2) prejudice arising therefrom. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). In trademark and copyright cases, any suit filed three years or more after the first allegedly infringing use is presumptively untimely for laches. *U.S. v. Mack*, 295 U.S. 480, 489 (1935); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973 (2014). But even if the elements of laches are established, a court need not bar the plaintiff's suit. The application of the laches defense is discretionary, and courts are to "look at all the facts and circumstances of the case and weigh the equities of the parties." *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*,

---

[2] Both parties also mention the law of the case doctrine in footnotes to their *res judicata* arguments. [79, at 7 n.4; 84, at 3 n.2.] It is a basic tenant of the American adversarial process that "a ruling made in an earlier phase of litigation controls the later phases unless a good reason is shown to depart from it." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004). As the Court has already ruled, claims stemming from the Defendants' marketing of the Catalyst Bed are separate and distinct from the Plaintiffs' prior claims. [41, at 18–19.] The only issue with regard to the "law of the case" is whether the Second Amended Complaint revealed that Plaintiffs' claims actually relate entirely to the previously dismissed claims. As explained, they do not.

2003 WL 21982141, at *11 (N.D. Ill. Aug. 20, 2003) (citation and internal quotations marks omitted).

In its previous opinion, the Court declined to bar Plaintiffs' Catalyst Bed claims under the doctrine of laches based on the timeline before it. [41, at 25.] The Court stated, however, that Defendants were not precluded from raising an argument based on laches to an amended complaint. [*Id.*]

Defendants assert that by June 2011, Plaintiffs knew that Defendants sought to develop "a tiltable bed to compete with the Total Lift Bed, while allegedly continuing to market the Total Lift Bed as the 'Kreg Bed' and referring to [Plaintiffs'] intellectual property as 'our patented technology.'" [78, at 9.] However, even if the Plaintiffs knew or should have known that Defendants were developing a competing bed, they could not have known in 2011 that Defendants would use Plaintiffs' intellectual property to market that bed in 2014 and beyond. Defendants have not pointed to any allegations indicating that Plaintiffs knew, or should have known, that Defendants would use the TOTAL LIFT BED mark in connection with the marketing and sale of the Catalyst Bed. Even if Plaintiffs suspected such a plan, Plaintiffs' claims did not become cognizable until Defendants' actively began using Plaintiffs' marks in conjunction with the Catalyst Bed in commerce.

The Defendants' cited authority does not suggest otherwise. In *AARP v. 200 Kelsey Associates, LLC*, the defendants sought to use the plaintiff's mark to sell their own magazine. 2009 WL 47499, at *1 (S.D.N.Y. Jan. 8, 2009). Unlike here, the parties had no prior relationship, and there was no suggestion that the defendant had any right to use the mark. Nonetheless, the defendants claimed that until they actually sold the magazine at issue, the plaintiffs did not have standing to bring their claim. *Id.* at *2. The court rejected that notion, explaining that "trademark

infringement and related claims * * * are not contingent on the actual sale of an infringing product." *Id*. at *10. Rather, the mark need only be used in commerce with the product in question. *Id.* at 11. Because the defendants in *AARP* were actively seeking licenses to publish a magazine with the infringing mark and had "'conducted an extensive analysis of the publishing industry,'" the court inferred that the defendants had used the mark in commerce. *Id.* at 11. The court therefore allowed the suit to proceed. *Id.*; see also *JGX, Inc. v. Handlery*, 2018 WL 984856, at *4–5 (N.D. Cal. Feb. 20, 2018) (allowing a Lanham Act case to proceed in light of the plaintiff's allegations that supported a reasonable inference that defendant's use of plaintiff's trademark to market a restaurant was imminent, notwithstanding the fact that the restaurant had not yet opened). Both *AARP* and *JGX* suggest that a plaintiff may sue when a defendant's infringing use of the mark is imminent, not when the plaintiff has any reason whatsoever to believe an infringing use could occur at some uncertain time in the future.

Defendants' argument boils down to this: because Plaintiffs allegedly knew that Defendants were marketing the Total Lift Bed as the "Kreg Bed" and referring to Plaintiffs' intellectual property as "our patented technology" in 2011, Plaintiffs knew or should have known that Defendants would seek to market the Catalyst Bed a few years later using Plaintiffs' intellectual property. [78, at 9 (citing 71, ¶¶ 60–61, 63).] The Court declines to make such a leap. Simply because Plaintiffs suspected that Defendants were using their intellectual property in a bid to develop a competing product does not mean that they had to assume Defendants ever would succeed in bringing the product to market. Such a holding would require plaintiffs to rush into the courthouse every time they even suspect their rights may be in danger. Such a requirement could flood the courts with speculative and premature lawsuits. *Cf. Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001) ("We have enough [ ] suits without having to create incentives to bring multiple

suits arising out of the same course of events."). Knowledge that another is trying to develop a competing product does not mean that an intellectual property violation is "imminent and impending." In both *AARP* and *JGX* the defendants had taken concrete steps to actually use the marks at issue in commerce. Here by contrast, nothing suggests that Defendants used the TOTAL LIFT BED mark to market the Catalyst Bed until 2014.

Because Defendants have not pointed to any allegations that show Plaintiffs knew or should have known of any concrete steps taken by Defendants to use Plaintiffs' intellectual property in connection with the Catalyst Bed prior to 2014, the Court again declines to conclude that laches bars Plaintiffs' current claims as a matter of law. That said, should discovery show otherwise, Defendants may raise an argument based on laches in a motion for summary judgment.

### 3. Judicial Estoppel

Finally, Defendants assert that all of Plaintiffs' claims are barred by judicial estoppel because they contradict Plaintiffs' position in the 2011 Lawsuit. Specifically, Defendants assert that Plaintiffs are reversing their position that Defendants' "rights to lease, rent, sell, or otherwise use [the Total Lift Beds] as [Kreg] [sees] fit continued undiminished." [78, at 10–11 (citing 2011 Lawsuit, Dkt. Entry 239, at 2, 7–8).] Plaintiffs respond that Defendants are confusing the issue. [79, at 11.] Plaintiffs did assert that Defendants would be free to advertise, sell, and rent the Total Lift Beds in their possession after the alleged breach at issue in the 2011 Lawsuit. [*Id.* at 11–12.] But, Plaintiffs argue, while Defendants were permitted to market the Total Lift Bed, they did not have permission to use Plaintiffs' intellectual property to advertise the Catalyst Bed. [*Id.* at 12.] The two positions are not inconsistent according to Plaintiffs. [*Id.*]

Judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation. *Zedner v. United States*, 547 U.S. 489, 504 (2006). Three factors that

inform the decision about whether to apply judicial estoppel are (1) whether the later position is clearly inconsistent with the earlier position; (2) whether the party to be estopped succeeded in persuading the first court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (citation and internal quotation marks omitted).

Here, Plaintiffs' current claims are not inconsistent with the position they took before this Court in the 2011 Lawsuit. In seeking to avoid liability for the Total Lift Beds that remained in Defendants' custody after the purported breach at issue in the 2011 Lawsuit, Plaintiffs argued that Defendants could still use or dispose of the beds as they saw fit because their rights in the property were undiminished. But as the Court has already explained, at issue in this litigation is not whether the Defendants may advertise the Total Lift Bed, the question is whether Defendants used advertisements containing Plaintiffs' intellectual property to sell their own competing Catalyst Bed. In essence, Plaintiffs allege that by advertising only the Total Lift Bed while simultaneously presenting the Catalyst Bed at tradeshows and conferences, Defendants sought to, and did, create confusion in the minds of consumers as to the origin of the Catalyst Bed. Plaintiffs may not complain about Defendants' advertising the Total Lift Beds in their possession for the legitimate purpose of selling those beds, but they may challenge those advertisements if they were used, as Plaintiffs allege, to facilitate Defendants' sales of the Catalyst Bed.

Because the issues in this case must be entirely divergent from those of the 2011 Lawsuit [see 41, at 8–18 (addressing Defendants' claim splitting argument)], any position taken by the

Plaintiffs in that case should not relate to the claims in this suit. Because the remaining claims, and the non-stricken allegations, satisfy that test, judicial estoppel does not apply.

### 4. Failure to State a Claim

In the alternative, Defendants argue that after striking the irrelevant matter in the complaint, Plaintiffs have still not plead with the specificity required by Rule 9(b) as to Counts II–III and Counts V–VII. Plaintiffs contend that they have. For the reasons that follow, the Court concludes that Count II and Counts V–VII may now proceed, but Count III may not.

"To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2016) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b) specifically requires alleging with particularity "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at *5 (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

In its second memorandum opinion and order, the Court explained that Plaintiffs had alleged "the headline of the newspaper story, but not its 'first paragraph.'" [67, at 19 (quoting *DiLeo*, 901 F.2d at 627 (7th Cir. 1990)).] Specifically, Plaintiffs had not pointed to "any specific marketing device (such as the exact brochure or website) in which Defendants ha[d] made particular misrepresentations about the Catalyst Bed in the two-and-a-half-year window between 2014 and 2016." [*Id.*] Consequently, the Court gave Plaintiffs one last opportunity to amend the complaint to try to meet Rule 9(b)'s requirements. [*Id.*]

Defendants argue Plaintiffs' new allegations still do not meet Rule 9(b)'s requirements. First, Defendants assert that the Court must disregard all of Plaintiff's factual allegations stated on "information and belief" because they do not meet the Seventh Circuit's standard to plead fraud on information and belief. [79, at 12–13.] Without those allegations, Defendants argue, Plaintiffs' claims fail. [79, at 13–14.]

### a. Fraud on Information and Belief

To plead fraud on information and belief, a plaintiff must (1) plead that the facts constituting the fraud are not accessible to the plaintiff and (2) plead facts that provide the grounds for his suspicions. *United States v. McMahon*, 2015 WL 115763, at *5 (N.D. Ill. Jan. 5, 2015) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011)). The provided grounds "must make the allegations plausible, even as the courts remain sensitive to the information asymmetries that may prevent a plaintiff from offering more detail." *Id.* According to Defendants, Plaintiffs do not support the allegations put forward on information and belief with why the facts underlying those beliefs are inaccessible or plead reasonable grounds for those purported suspicions. [78, at 12.] Defendants specifically point to paragraphs 33, 70, 78, and 101–103 of the Second Amended Complaint. [*Id.*][3]

Paragraph 33 of the Second Amended Complaint states, "Defendants previously marketed and, on information and belief, continue to market Plaintiffs' Total Lift Bed and or Kreg's [Catalyst] lift bed in bed in studies and trials by referring to Plaintiff's Total Lift Bed as the Kreg Total Lift Bed, the Kreg Bed, the Kreg Lift Bed, and/or the Kreg Tilt Bed." [71, ¶ 33.] Plaintiffs have pled no facts, however, that plausibly support the inference that Defendants have continued

---

[3] Defendants also seek to "preserve" their argument—which this Court previously rejected—that Plaintiffs claims against Defendant Poulos on "information and belief" are insufficient to support their claims against Poulos. [78, at 12 n.6.] Given the Court has already ruled on that issue, it will not address it again here.

to market the Catalyst Bed using materials that assert the Total Lift Bed is also Defendants' product since 2016. Thus, the Court will disregard this allegation as it relates to any ongoing conduct.

Paragraph 70 of the Second Amended Complaint alleges, "On information and belief, after May 25, 2016, Defendants Kreg and Poulos continued to show the Catalyst bed at tradeshows and conferences and continued to market and advertise Plaintiffs' Total Lift Bed while referring to Plaintiffs' Total Lift Bed and/or Plaintiffs' Patents as their bed and their patents, respectively." [70, ¶ 78.] The point is well taken that Plaintiffs' cannot "know every interaction that took place at every one of Defendants' tradeshow / conference booths" [79, at 14]; however, Plaintiffs have only alleged facts that show Defendants have been at tradeshows and conferences since May 25, 2016 [see 71, ¶ 84]. Plaintiffs do not point to a single allegation that supports the notion that Defendants have even had online advertisements for the Total Lift Bed since May 25, 2016. Thus, the Court will disregard this allegation.

Paragraph 78 of the Second Amended Complaint alleges, "On information and belief, from on or about 2014 through the present there are multiple email and verbal communications with customers and potential customers in which Defendant[s] [ ] attempted to provide one of Defendants [sic] Catalyst beds instead of a requested Total Lift Bed * * *." [71, ¶ 78.] First, Plaintiffs point out that discovery closed in the 2011 Lawsuit before the Catalyst Bed was released in 2014. [2011 Lawsuit, Dkt. Nos. 51, 71, 87, 110.] Plaintiffs also highlight that the only reason they received the email at issue (discussed in detail below) is that the customer copied Plaintiffs on her emails to Defendants. The Court agrees that Plaintiffs have adequately pled why the facts are inaccessible. The question is whether they have adequately pled grounds that make those suspicions plausible.

To support their suspicions, Plaintiffs point to a January 2018 email in which an employee of Defendants said he would be "happy to help" in response to a hospital's request for a Total Lift Bed. [71, ¶ 77.] Plaintiffs assert that in light of the fact that Defendants only carried two early versions of the Total Lift Bed, had removed all advertisements for the Total Lift Bed from their website, and had released the Catalyst Bed, the only logical conclusion is that Defendants were trying to pass the Catalyst Bed off as the same or related to the Total Lift Bed. [*Id.*] Defendants contend that such an inference is nonsensical. [84, at 9.] As explained above, however, Plaintiffs only need to plead grounds that make it plausible that such emails exist. The question is what the Court can plausibly infer from the email. While not exactly a smoking gun, the response of Defendants' employee that he was "happy to help" a customer procure a product which Defendants no longer advertised plausibly suggests that he intended to provide Defendants' bed rather than the Plaintiffs'. Consequently, the Court concludes that Plaintiffs' allegations in Paragraph 78 are adequately supported to be pled on information and belief. The Court may therefore consider the allegations in its evaluation of Defendants' Rule 12(b)(6) motion.

Finally, Paragraphs 101–103 contain allegations only pertinent to Plaintiffs' claims for copyright infringement [see 78, at 25–27 ("Defendants' Copyright Infringement")], which the Court has already held are only subject to Rule 8's pleading standards, [67, at 20–22]. Consequently, Plaintiffs need not plead that the facts at issue are under Defendants' control or the grounds for their belief.

### b. Adequacy of the Current Complaint

Finally, in light of the stricken material, Defendants maintain that Plaintiffs new allegations remain well below Rule 9(b)'s particularity threshold. In response, Plaintiffs point to the Second Amended Complaint's allegations regarding "Specific Direct Correspondence With Potential

Customers," "Specific Websites," "Specific Brochures," and "Specific Tradeshows/Conferences from 2014-2016," in which Defendants purportedly made misrepresentations about the Catalyst Bed. [79, at 13 (citing 71, ¶¶ 77, 78; *id.*, ¶¶ 52, 54, 55, 60, 63, 79–83, 92; *id.*, ¶ 61; and *id.*, ¶¶ 71–75, respectively) (emphasis omitted).] These allegations, Plaintiffs argue, show Defendants' misrepresentations include "(i) fraudulently filing for patent protection over features not invented by Defendants to assert that the Catalyst Bed was patent-protected; * * * (iii) continuing to advertise (via website, brochure, and tradeshow) only the Total Lift Bed even after Defendants released the Catalyst Bed in 2014; and (iv) attempting to provide a Catalyst Bed in response to a potential customer's request for a Total Lift Bed." [79, at 13.][4]

The Court first notes that the parties appear to agree that if Plaintiffs have adequately alleged facts to state a claim under either Lanham Act theory (Counts II and III), then they have stated a claim under the common law unfair competition (Count V) and Illinois state statute (Counts VI–VII) theories. Consequently, the Court will only review whether Plaintiffs have stated a claim for false designation and/or false advertising under the Lanham Act.

### i. False Designation

To state a claim for false designation of origin under the Lanham Act, a plaintiff must allege that: (1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir.1990) (citing 15 U.S.C. § 1125(a)). To satisfy

---

[4] As explained below, in light of the testimony from the 2011 Lawsuit, Plaintiffs have not pled facts to support the notion that Defendants' have fraudulently advertised patent protected features, thus the Court has omitted (ii).

the third element, actual confusion is not necessary. Rather, a plaintiff need only show that there is a likelihood that consumers will be confused by the false representation. *Id.*

Defendants do not specify which elements they believe Plaintiffs have failed to plead to support their claim. Rather, they assert that Plaintiffs have still not met their burden because (1) Plaintiffs have still not alleged a single instance where Defendants represented to anyone that the Catalyst Bed was the same as the Total Lift Bed or was affiliated with Plaintiffs; and (2) Plaintiffs have not identified a single consumer or conference attendee who expressed any confusion, where it occurred, or the how they communicated that confusion. [78, at 13.] Specifically, Defendants deny that the January 2018 email exchange [78-1] demonstrates that Defendants intended to cause confusion or that the customer was confused. [78, at 13–14.] In light of these assertions, the Court will examine whether Plaintiffs have stated a claim as to the first and third elements.

*First Element* — False designation of origin claims take two basic forms, "passing off" and "reverse passing off." *Web Printing Controls*, 906 F.2d at 1203 n.1. Plaintiffs' allegations fall into the first category in which a defendant seeks to sell a good of its own creation under the name or mark of another.[5] *Id.* Using images of another's product to sell or advertise one's own is a classic example of such prohibited behavior. In *BlueStar Mgmt. v. The Annex Club, LLC*, for example, a court in this district found that allegations that the defendant had placed a photograph of plaintiff's rooftop deck next to a link to the defendant's own rooftop deck in an advertisement adequately plead facts under Rule 9(b) to support a claim of false designation. 2010 WL 2802213, at *4 (N.D. Ill. July 12, 2010).

---

[5] While Plaintiffs maintain throughout the Second Amended Complaint that Defendants sought to appropriate the TOTAL LIFT BED mark as their own—which would constitute a reverse passing off claim—those allegations have been set aside for the reasons already explained. The only remaining issue is whether Defendants sought to use the TOTAL LIFT BED mark and other related intellectual property to sell the Catalyst Bed, which is a classic passing off claim.

Here, Plaintiffs similarly allege that Defendants displayed the Catalyst Bed at specific tradeshows in May 2014; September 2015, April 2015, and April 2016. [71, ¶¶ 71-75.] From at least January 2014 to May 25, 2016, Defendants did not advertise the Catalyst Bed on their website; rather, the website advertised the Total Lift Bed alone. [*Id.* ¶ 60.] Similarly, Defendants distributed a brochure at those conferences and tradeshows that included only the Total Lift Bed. [*Id.* at 61.] Importantly, the Defendants' did not show Plaintiffs' Total Lift Bed at any of the tradeshows at which the Catalyst Bed was displayed. [*Id.* ¶¶ 71-75.] Based on these specific allegations, the Court may plausibly infer under Rule 9(b) that Defendants sought to convince customers that the Catalyst Bed on display at their booth was somehow connected to or affiliated with Plaintiffs' Total Lift Bed. Thus, the Court concludes Plaintiffs have adequately pled facts with particularity to support the first element of a false designation claim.

*Third Element* — As explained above, Plaintiffs do not have to plead facts that show actual confusion. Pleading that consumers are likely to be confused is sufficient to meet the third element of a false designation claim. *Web Printing Controls Co., Inc.,* 906 F.2d at 1204. Thus, Defendants' assertion that Plaintiffs have not identified a single consumer or conference attendee who expressed any confusion, where it occurred, or the how they communicated that confusion is immaterial. Moreover, the Court concludes that Plaintiffs' allegations regarding the January 18 email [78-1] do plead facts that show at least one individual was confused by Defendants' advertising practices. The fact that an individual thought she could procure a Total Lift Bed from the Defendants—even though Defendants had pulled the Total Lift Bed from their website in 2016 and had only advertised the Catalyst Bed—plausibly supports an inference that Defendants' marketing practices were likely to cause confusion, especially in light of the allegation that attendees of at least one tradeshow stated that the Catalyst Bed appeared to be a copy of the Total

Lift Bed. [71, ¶ 71.] The Court therefore concludes that Plaintiffs have pled facts with particularity to meet the third element of a false designation claim under the Lanham Act. Plaintiffs have now stated a claim under Count II.

### ii.     False Advertising

To state a claim for false advertising under the Lanham Act, a plaintiff must allege that: (1) the defendant made a false statement of fact about its own or another's product in a commercial advertisement; (2) the statement deceived or has the tendency to deceive a substantial portion of its audience; (3) the deception is likely to influence consumers' purchasing decisions; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir.1999) (citing 15 U.S.C. § 1125(a)).

Again, Defendants have not specified which elements they believe Plaintiffs have failed to plead with particularity to support their claim. Rather, Defendants assert (1) Plaintiffs have still not alleged a single instance where Defendants represented to anyone that the Catalyst Bed was the same as the Total Lift Bed or was affiliated with Plaintiffs and (2) Plaintiffs have not identified a single consumer or conference attendee who expressed any confusion, where it occurred, or how they communicated that confusion. [78, at 13.] Specifically, Defendants' dispute that the alleged representations about the Catalyst Bed's features suggest Defendants attempted to mislead anyone. [78, at 13–14.] Based on those arguments, the Court will examine whether Plaintiffs have stated a claim as to the first and fifth elements.

*First Element* — The Court agrees with Defendants that the allegations regarding Defendants' representations about the Catalyst Bed's features do not plead fraud with particularity under Rule 9(b). As Defendants highlight, Poulos testified that the Catalyst Bed did not have a

scale in the foot support, not that the bed didn't have scales at all. [78, at 14 (citing 2001 Lawsuit, Dkt. Nos. 281–82.).] Additionally, Poulos testified that Defendants' dealers had come up with a process that made having a footboard scale unnecessary. [79-1, at 123:24–124:7.][6] Thus, the Court concludes that Plaintiffs' allegations that Defendants' made fraudulent representations regarding a "weight bearing control system" are implausible. Similarly, Plaintiffs have not pled any facts to show that the Defendants' product does not have a "movable foot support" or the other "Patented Features" that Defendants' bed allegedly has. [71, ¶¶ 87–89.] In short, the Court concludes that Plaintiffs have not alleged facts with particularity that show Defendants have fraudulently represented that their beds contain Plaintiffs' patented features. According to Plaintiffs' allegations, and the prior testimony, it appears Defendants' advertisements are entirely consistent with Poulos's previous testimony. A website or brochure that advertises a product with features protected by the patents of another does not constitute fraud, though it may be evidence of a patent violation.

Plaintiffs have still not pled with particularity anything to suggest that Defendants' advertisements were materially false. As previously explained, Plaintiffs' allegations regarding Defendants' claims about their ownership of the TOTAL LIFT BED mark have been stricken, and the allegations regarding Defendants' false statements about the patent protected features of their Catalyst Bed are contradicted by the testimony at trial in the 2011 Lawsuit.[7] Plaintiffs have not

---

[6] The Court may take judicial notice of prior trial testimony in related cases. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir.1983) ("Among these matters of which a court may take judicial notice are its own court documents and records.") (citing *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir.), certiorari denied, 404 U.S. 967 (1971)). Moreover, Plaintiffs attached the relevant section of the trial testimony in question to their own response [79]. [See 79-1.]

[7] Plaintiffs' response appears to insinuate that Defendants no longer have any Total Lift Beds to sell. [79, at 13 n.12.] Those allegations are not in the complaint, however, nor do Plaintiffs cite a section of the trial transcript in which those statements were allegedly made. The Court cannot consider facts that lie outside the complaint and are not judicially noticeable.

pointed to any other allegations that support a claim that Defendants made a false statement of fact about the Catalyst Bed or the Total Lift Bed in a commercial advertisement. Consequently, the Plaintiffs have not stated a claim for false advertising under the Lanham Act.

Although Count III will be dismissed, Plaintiffs' Second Amended Complaint provides allegations regarding the use of specific marketing devices in circumstances that plausibly show that Defendants represented that the Catalyst Bed was affiliated with, or the same as, the Total Lift Bed. Consequently, Count II and Counts V–VII may now proceed.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion [77] is granted in part and denied in part. The Court grants Defendants' motion to strike in part: portions of paragraphs 29, 51, 60, 122, 131, 159, 167, and 180 (29(1) , 51(i), 60 (last sentence), 122 (last clause), 131(i), 159(i), 167(i), 180(i)) are stricken from the Second Amended Complaint as they address claims this Court has previously dismissed. Furthermore, the Court grants Defendants' motion to dismiss Count III and denies Defendants' motion as to Count I, Count II, Count IV, Count V, Count VI, and Count VII. This case is set for further status hearing on April 10, 2019 at 9:30 a.m.

Dated: March 27, 2019

_____
Robert M. Dow, Jr.
United States District Judge